No. 45,644

STATE OF KANSAS, *Appellee,* v. LARRY J. HENDERSON, *Appellant.*

(468 P. 2d 136)

Opinion filed April 11, 1970.

*Frederick L. Haag,* of Wichita, argued the cause, and was on the brief for the appellant.

*David P. Calvert,* deputy county attorney, argued the cause, and *Kent Frizzell,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a direct appeal in a criminal action wherein the defendant, Larry J. Henderson, was convicted by a jury of first degree robbery (K. S. A. 21-527) and possession of a pistol after conviction of a felony (K. S. A. 21-2611). Following denial of defendant's motion for new trial, the district court sentenced him under the habitual criminal act to consecutive sentences of twenty-five and fifteen years, respectively, in the state penitentiary.

The questions presented relate to alleged trial errors defendant contends denied him a fair trial, namely, that the court erred (1) in refusing to allow court-appointed counsel to withdraw; (2) in not allowing the defense to cross-examine two state's witnesses and to call defense witnesses regarding the true identity of the robber; and (3) in allowing a police officer to remain in the courtroom, and thereafter testify, in violation of the court's order for separation of all witnesses.

The charges of which defendant was convicted stemmed from an armed robbery of a Wichita dry cleaning establishment between 3:30 and 5:00 p. m. on March 9, 1968. The robber, armed with a pistol and dressed in dark pants, white shirt, and a blue cardigan sweater, entered the cleaning shop, pointed the gun at two women employees, one of whom was the manager and part owner, and demanded they open the cash register. Upon the robber's threat that he would shoot her, the manager opened the register and the robber removed approximately $150.

As the robber departed, a customer by the name of James Gott entered the shop. On being told that the shop had just been robbed, Mr. Gott rushed outside and saw the robber fleeing in a black automobile. Mr. Gott and his wife gave chase in their automobile until the robber came to a stop, abandoned his car, and continued his flight on foot. At this point Mrs. Gott jumped out of her car and ran to a nearby house to telephone the police; her husband continued the chase and glimpsed the robber running into a house on West Kincaid.

When the police officers arrived, they entered the house into

which the robber had disappeared and arrested the defendant. One of the officers, in looking around outside the house, found a sweater in the eaves trough similar in color and material to the one worn by the robber, with a pistol wrapped inside it. Armed with a search warrant, the officers subsequently searched the house and recovered the money from an ice tray in the refrigerator where it had been placed by Joyce Eshom, who lived in the house and to whom defendant had handed the money before he was apprehended.

The defendant was taken to the police station where later that evening the manager of the cleaning shop, her employee, and the Gotts identified him in a lineup as the robber. Following arraignment and waiver of preliminary hearing, defendant was bound over to district court for trial.

On September 16, 1968, the district court appointed Mr. D. Keith Anderson, of Wichita, to represent defendant. During the three days immediately following his appointment, Mr. Anderson had at least five conferences with the defendant concerning the facts and merits of the case, and conducted an investigation in preparation for trial. On Friday, September 20, four days prior to commencement of trial, Anderson again consulted with his client and presented to him the theory of defense consistent with the facts as previously related to him by defendant and the circumstances disclosed by his investigation. Defendant rejected Anderson's theory and insisted the case be tried upon a concocted "story" which defendant, for the first time, related to Anderson. Believing the "story" to be totally false, Anderson advised the defendant he would not be a party to perjury. Defendant replied he was willing to run the risk of perjury, and insisted the trial proceed on the basis of his 'new" version.

The following morning, Saturday, September 21, Anderson concluded that because of the serious ethical conflict in which he found himself involved, he could not represent the defendant in the fashion demanded, and so advised David P. Calvert, the deputy county attorney. Since trial was set for Tuesday (the 24th), time in which to formally present a motion to withdraw was insufficient. Thus, Anderson, accompanied by Calvert, personally contacted Judge B. Mack Bryant, before whom the case was scheduled to be tried, and Judge Howard C. Kline, administrative judge of Sedgwick county, whose decision governed the granting of a withdrawal of court-appointed counsel, at their respective residences and made

oral application to withdraw. In support of his request Anderson advised Judge Bryant and Judge Kline of defendant's avowed intention to present perjured testimony and of his demand that his attorney assist him in the unethical conduct of the trial, but divulged no confidential attorney-client communications. The request was denied and Anderson was directed to proceed to trial, making whatever statements he considered necessary in the record to protect himself ethically.

On Sunday, Anderson again consulted with defendant, fully advising him of all that had transpired the preceding day. At docket call the following morning (Monday) defendant instructed Anderson to request a jury trial and to proceed with his case on the basis of the "new" verision. He also told Anderson he believed Anderson had betrayed the attorney-client relationship between them by his actions the preceding Saturday. Anderson advised defendant that if he was dissatisfied with him as counsel, he should so announce in court and request appointment of another attorney. According to Anderson, defendant refused, "indicating that I had prejudiced his rights and he desired that prejudicial error to remain unaltered for purposes of appeal should a conviction result."

When the case came on for trial Tuesday, September 24, and prior to the impaneling of the jury, Anderson recited the above facts and again asked leave to withdraw and for new counsel to be appointed. Anderson stated to the court defendant then refused to cooperate with him in preparation for trial, and further refused to divulge what his testimony would be. The court denied the request, after which Anderson said he was prepared to represent the defendant to the best of his ability. Anderson at that time also presented a motion in limine, which, after argument, was overruled. A jury was impaneled and sworn. After completion of the state's case, Mr. Anderson again renewed his motion to withdraw, and the following colloquy took place outside the presence of the jury:

"MR. ANDERSON: I wish to make a short statement and I relate at this time to the detailed statement made by me preliminarily in my motion for permission to withdraw as court-appointed counsel and now state that I have fully advised the defendant again of my position in this case and that he is testifying against my advice but that he has the right to testify and tell his story but that he is shouldering the responsibility of that story and any consequences that may result therefrom.

"THE DEFENDANT: Your Honor, if I may ask, I would like to know how in the world—you know yourself that this man has tried to resign from me twice and it's on record that I did not want this man for the attorney to

represent me and that he did not want to represent me and it is on record, and how in the world can I get a fair trial out of this deal?

"THE COURT: I think, Mr. Henderson—

"THE DEFENDANT: You've overruled every motion that we've had. This is very plain to see. And any defense that I have had in this case, the prosecuting attorney has got some kind of explanation for it. He's got two or three ways to cover it already before I even get it out of my mouth.

"MR. ANDERSON: Your Honor, I'd like to say very shortly that I think this is a contradiction to my earlier motion. This is the first time the defendant has stated he did not desire my representation herein; and if he is now stating this, then I revive my motion to withdraw; although the Court overruled it, I will continue to represent him to the best of my ability until the determination of this case, until the Court relieves me of my duty herein.

. . . . . . . . . . . . . .

"THE DEFENDANT: Your Honor, if I may say so, I did not say that I did not want him in this motion before but he plainly stated in his statement that he made to you that he read off that I told him that I could not trust him. Is that no [sic] so? And, now, I'm making a motion for this.

"THE COURT: Well, what I just said was that any motion heretofore made has already been ruled on and I'm not going to change my ruling, and any motions made here and now, at least up to the present time, are overruled.

. . . . . . . . . . . . . .

"THE COURT: . . . As I was about to say before I was interrupted, I assume that Mr. Anderson has advised the defendant of his right to take the stand if he desires. And if he does not desire to take the stand, if Mr. Anderson has not advised the defendant, the Court will now advise the defendant that this jury will be instructed that the defendant's failure to take the stand is not to be considered by them in any manner as any indication of his guilt in this case. That will be one of the instructions that would be given a jury."

The motion to withdraw was again overruled. Mr. Anderson proceeded to make an opening statement for the defense, and presented one witness, Mr. David C. All, an attorney who, at defendant's request, was present at the time of the lineup. Mr. All testified that defendant at the time appeared to be suffering from a hangover and from the effects of alcohol. Upon inquiry by the court, defendant stated he did not wish to testify in his own behalf. Final arguments were presented by the deputy county attorney and by Mr. Anderson. The jury was instructed and subsequently returned verdicts of guilty on both counts. Mr. Frederick L. Haag was appointed to represent defendant after he announced his intention to appeal.

Defendant's main complaint is that he was denied full and fair representation when the trial court refused Anderson's motion

to withdraw and request for the appointment of new counsel. Defendant is not claiming he was inadequately represented; rather, he contends the trial court's action resulted in his not being "fully and fairly" represented, as required by K. S. A. 62-1304a.

Looking first at the propriety of Mr. Anderson's actions after he learned of the defendant's "new" version of the facts and his insistence upon the defense being conducted along that line, we are of the opinion Anderson acted according to the moral and ethical obligations required of him as a member of the legal profession.

The law requires honest, loyal, genuine, and faithful representation of a defendant by his attorney, whether employed or court-appointed. (*State v. Brown,* 204 Kan. 430, 464 P. 2d 161; *State v. Calhoun,* 194 Kan. 378, 399 P. 2d 886.) A lawyer's professional duty requires him to be honest with the court and to conform his conduct to recognized legal ethics in protecting the interests of his client. Counsel, however, is never under a duty to perpetrate or aid in the perpetration of a crime or a dishonest act to free his client. Neither is he required to stultify himself by tendering evidence or making any statement which he knows to be false as a matter of fact in an attempt to obtain an acquittal at any cost. In conducting his task, counsel should be guided by the standard "all fair and honorable means," as laid down by Canon 5 of the American Bar Association Canons of Professional Ethics (198 Kan. xvii), in discharging the duty imposed by that canon "to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law." For a few of the decisions speaking of these ethical considerations, see, *Jackson v. United States,* 258 F. Supp. 175, affirmed, 384 F. 2d 375, cert. denied, 392 U. S. 932, 20 L. Ed. 2d 1392, 88 S. Ct. 2298; *Bowler v. Warden, Maryland Penitentiary,* 236 F. Supp. 400; *United States v. Von Der Heide,* 169 F. Supp. 560; *Williams v. Beto,* 354 F. 2d 698 (5th Cir., 1965); *Wood v. United States,* 357 F. 2d 425 (10th Cir., 1966), cert. denied, 385 U. S. 866, 17 L. Ed. 2d 94, 87 S. Ct. 129. Also, see, Canons, 15, 16, 22, 31, and 32.

The high ethical standards demanded of counsel in no way mollify the fair, full and loyal representation to which an accused is entitled as a part of due process. They are entirely consistent with the objective of our legal system—to ascertain an accused's

guilt or innocence in accordance with established rules of evidence and procedure designed to develop the facts truthfully and fairly. Counsel, of course, must protect the interests of his client and defend with all his skill and energy, but he must do so in an ethical manner.

We perceive nothing violative of the confidentiality inherent in the attorney-client relation by Mr. Anderson's making known to the court defendant's avowed intention of presenting perjured testimony. While as a general rule counsel is not allowed to disclose information imparted to him by his client or acquired during their professional relation, unless authorized to do so by the client himself (*State v. Leigh*, 178 Kan. 549, 289 P. 2d 774), the announced intention of a client to commit perjury, or any other crime, is not included within the confidences which an attorney is bound to respect. (Canon 37; also, see, K. S. A. 60-426 [*b*] [1].) Moreover, the record does not disclose the specific details of any communications between the defendant and his counsel were ever divulged by Anderson to the court or the prosecution. When Anderson learned that the defendant would not agree to the presentation of a defense consistent with the facts defendant initially related to him, and which were substantiated by Anderson's own independent investigation, he acted according to the dictates of his own conscience and his professional obligation to the court, and properly asked to be relieved from his assignment.

When the trial judge became informed of counsel's predicament, he was faced with a difficult decision calling for the exercise of sound judicial discretion. The right to counsel, which the court was obligated to safeguard for the accused's benefit, contemplates the guidance of a responsible, capable lawyer devoted to his client's interests. (*Ray v. State*, 202 Kan. 144, 446 P. 2d 762.) As long as the trial court had a reasonable basis for believing that the attorney-client relation had not deteriorated to a point where appointed counsel could no longer give effective aid in the fair presentation of a defense, the court was justified in refusing to appoint new counsel.

A careful study of the record convinces us that the situation confronting the court, and about which defendant now complains, was precipitated by the defendant himself. On the morning of trial when Anderson asked the court for permission to withdraw, he told the court he had previously asked the defendant to

request that another attorney be appointed in his stead but defendant refused because he "desired the prejudicial error" remain for purposes of appeal. Defendant in no way denies his attorney's statement, as evidenced by the colloquy set forth above at the close of the state's evidence. Obviously, the defendant wished to dictate the conduct of his defense in a manner which the law does not countenance, and by complicating the situation, hoped to gain some advantage, both at trial and on appeal. One who by his own acts invites error is in no position to complain or take advantage of it on appeal. (*State v. Cantrell*, 201 Kan. 182, 440 P. 2d 580, cert. denied, 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315.) Despite the fact that defendant then changed his stance and, according to Anderson, refused to cooperate and to divulge just what his testimony would be, Anderson, with commendable professional candor and patience, stated he was prepared to represent the defendant to the best of his legal ability.

Defendant, by his devious methods, invited the only course of action available to the trial judge if the case was to be disposed of with any reasonable degree of dispatch. The effective and efficient administration of criminal justice requires that a trial court not yield to every whim and demand of a defendant. Had the court granted counsel's motion to withdraw, the same predicament could easily have been precipitated by defendant with respect to any new counsel that might have been appointed.

The trial judge's confidence in Mr. Anderson's capability to remain in the case was well placed, in our view. In addition to presenting the motion in limine, Anderson thoroughly cross-examined the state's witnesses, particularly as to the identity of the person who committed the robbery. He made an opening statement for the defense and presented the testimony of an attorney present at the lineup with regard to the defendant's behavior and appearance, which, of course, was relevant to the question of identification. Further, defendant was fully informed by counsel, as well as the court, of his right to take the stand and "tell his story," but defendant declined to do so.

Success can never be deemed the measure of whether or not an accused has had the effective assistance of counsel. The representation accorded defendant was far more than token or perfunctory in nature, and there can be no question about its adequacy. (*Baker v. State*, 204 Kan. 607, 464 P. 2d 212; *State v. Brown*, supra.)

Under all the facts and circumstances, we hold that the trial judge did not abuse his discretion to the prejudice of defendant's substantial rights by requiring Anderson to remain as counsel. (See, *State v. Way*, 204 Kan. 375, 461 P. 2d 820; *State v. Walker*, 202 Kan. 475, 449 P. 2d 515.)

Defendant's contention that the trial court committed prejudicial error by not allowing the defense to cross-examine two of the state's witnesses and to call defense witnesses regarding the identity of the robber is without merit. This point was the basis of the motion in limine which was overruled at the beginning of trial. The record discloses that during the cross-examination of a prosecution witness, Joyce Eshom, defense counsel asked to be allowed to question the witness regarding her relationship with another prosecution witness and her knowledge of an unidentified person resembling the defendant who allegedly committed the robbery. Counsel also at that time made known to the court that defendant had asked him to call six defense witnesses, among whom was a district judge, the bailiff, and a deputy county attorney, whose testimony would tend to show another person was, in fact, the guilty one. The trial court denied defense counsel the right to pursue this line of questioning, and further indicated he would not permit the defendant to call the six witnesses. The defense made no further attempt during the presentation of its case to call any of the named witnesses.

Defendant contends the proffered evidence, though not strong, was relevant to the issue of identity inasmuch as it tended to disclose the offense was not committed by defendant, and that two prosecution witnesses were concealing the identity of the true culprit for reasons of their own. While the sufficiency of the "proffer" is open to serious question (see, K. S. A. 60-243 [c] and 60-405), we have no hesitancy in holding the exclusion of the suggested evidence did not amount to prejudicial error requiring a new trial.

The state relied almost entirely upon direct evidence for defendant's conviction. He was positively identified by the victims of the crime, by the persons who followed him from the scene, and by Joyce Eshom, the person to whom defendant gave the money from the robbery. There was no other evidence remotely connecting a third person with the commission of the crime. Ordinarily, a court does not err in refusing to admit evidence tending to connect a third person with an offense except where the prosecu-

tion relies upon circumstantial evidence for conviction. (*State v. Neff,* 169 Kan. 116, 218 P. 2d 248, cert. denied, 340 U. S. 866, 95 L. Ed. 632, 71 S. Ct. 90; *State v. Scott,* 117 Kan. 303, 235 Pac. 380.) Just today we held that where the state's case is built on direct evidence, evidence that someone other than the defendant had a possible motive to commit the crime is irrelevant, absent other evidence to connect such third person with the crime. (*State v. Potts,* 205 Kan. 42, 468 P. 2d 74.)

Also lacking in substance is the further contention that the court committed prejudicial error in allowing a detective to testify for the state after he had remained in the courtroom throughout the trial in violation of the court's order for separation of all witnesses. Violation of a separation order does not disqualify a witness from testifying in the case, and the court, within its discretion, may admit his testimony, notwithstanding violation of such order. (*State v. Trotter,* 203 Kan. 31, 453 P. 2d 93; *Barber v. Emery,* 101 Kan. 314, 167 Pac. 1044; *State v. Falk,* 46 Kan. 498, 26 Pac. 1023.) There is no showing that the court abused its discretion in permitting the detective to testify.

The grounds raised in defendant's motion for new trial, other than those discussed herein, have neither been specified as error nor briefed; hence, they are not reviewable. From the overall record we are satisfied the defendant received a fair trial with the aid of competent counsel, and the trial court properly overruled the motion for new trial.

The judgment is affirmed.