The PEOPLE of the State of
Colorado, Petitioner,

v.

Glen O. SCHULTHEIS, Respondent.

No. 80SC229.

Supreme Court of Colorado,
En Banc.

Oct. 19, 1981.

Rehearing Denied Dec. 7, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., J. Stephen Phillips, First Asst. Atty. Gen., Litigation Section, Jeffrey Weinman, Asst. Atty. Gen., Denver, for petitioner.

Craig A. Murdock, Denver, for respondent.

Dale Tooley, Dist. Atty., Second Judicial Dist., Brooke Wunnicke, Chief Appellate Dist. Atty., Stephen S. Marsters, Chief Deputy Dist. Atty., Denver, amicus curiae.

ERICKSON, Justice.

We granted certiorari to review *People v. Schultheis*, Colo.App., 618 P.2d 710 (1980), which held that defense counsel has an affirmative duty to withdraw when an accused demands that defense counsel call witnesses to present perjured alibi testimony. The court of appeals also held that, under such circumstances, the trial court must grant defense counsel's motion to withdraw. We reverse and remand to the court of appeals with directions to affirm the defendant's conviction for first-degree murder.

While incarcerated at the Denver County Jail, Glen O. Schultheis was charged with murder and sexual assault of one of his fellow inmates. The victim, Joseph C. Dodrill, was dubbed a "snitch" by other inmates. Schultheis agreed to kill Dodrill for $75. However, he waived the fee with the understanding that he would "have some fun" with the victim before he killed him.

A plan was made to lead Dodrill back to his cell with Schultheis shortly before 7:00 p. m. on June 10, 1977, when jail cells were automatically locked for approximately two hours. During that time, Dodrill was strangled, his throat was cut, and he was stabbed repeatedly in the head and back. The words "Life is really a trip you know" were carved on the victim's back and buttocks. The body was discovered with a homemade knife implanted in the victim's back. Schultheis subsequently described the grisly homicide to several inmates, and said that he had sodomized Dodrill before he killed him. Some of the inmates saw Schultheis in the cell with Dodrill shortly after 7:00 p. m. Apart from the physical evidence, a number of inmates, after being granted immunity, testified as to the agreement made by Schultheis to kill Dodrill and as to the events which occurred after Schultheis and Dodrill were locked in the same cell together.

The defendant initially tendered a plea of not guilty by reason of insanity. He was then examined by two court-appointed psychiatrists, and admitted his culpability to both.[1] When both psychiatrists reported that Schultheis was sane, the initial plea was withdrawn and Schultheis entered a plea of not guilty.

On the morning of trial, Schultheis arrived in jail clothing, asked for a continuance, and announced that he would not proceed to trial because his defense counsel was inadequate and unprepared. He asserted that his lawyer refused to subpoena two alibi witnesses who would testify that he was not in the cell with Dodrill at the time of the homicide. After some discussion, court-appointed defense counsel stated that he "refused to affirmatively put on evidence that [he knew] was fabricated." Counsel then asked to make a record outside the presence of the prosecutor and the

trial judge, and moved to withdraw from the case on the grounds of irreconcilable differences. The court granted counsel the right to make a record, but denied the motions for continuance and for withdrawal.

Schultheis and his counsel made a record out of the presence of the trial judge and the prosecutor to establish the basis of their disagreement. The record showed that, two days before trial, the defendant asked his counsel to call certain witnesses from the Denver County Jail to testify in his behalf. Counsel refused, declaring that he would not call the prisoners as witnesses because he "knew their testimony would be fabricated" and that, as a lawyer, he had an ethical duty to refrain from presenting perjured testimony. Defense counsel, according to the record, knew that the witnesses would lie because of his own conversations with Schultheis and because of a prior conversation Schultheis had with one of the examining psychiatrists.[2]

After defense counsel made his record, he proceeded to represent Schultheis at the trial. The two alibi witnesses were not called to testify, and Schultheis was convicted of first-degree murder.

Schultheis appealed to the court of appeals, which reversed his conviction. *People v. Schultheis, supra.* The court of appeals held that a lawyer has an affirmative duty to withdraw from a case in which his client is intent upon presenting perjured witness testimony, and, under such circumstance, the court must grant the lawyer's motion to withdraw. The court of appeals also held that a lawyer who withdraws from such a situation may not state the factual basis for the motion to withdraw. In its view, if counsel knows that his continued employment will result in a disciplinary violation, he must refer to the specific provisions of the Code of Professional Respon-

---

1. The psychiatric examinations were made pursuant to section 16–8–101 *et seq.*, C.R.S.1973 (1978 Repl. Vol. 8). The reports of the psychiatric examinations were then made available to the defense counsel, the prosecutor, and the trial judge. Section 16–8–106(4), C.R.S.1973 (1978 Repl. Vol. 8).

2. The defendant described to one of the examining psychiatrists, in great detail, how he had killed the victim. This description was contained in the psychiatrist's report to the court.

sibility that prohibit a lawyer from using perjured testimony or false evidence. We granted certiorari, and for the reasons set forth in this opinion, we reverse the court of appeals.

## I.

We first address the court of appeals' holding that a lawyer has an affirmative duty to withdraw from a case when his client insists upon presenting perjured testimony through alibi witnesses. In reaching its decision, the court of appeals concluded that Schultheis was denied effective assistance of counsel because his lawyer acted as an *amicus curiae* rather than as an active advocate. *See generally, Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We disagree and conclude that, in this instance, the concepts of professional ethics and effective representation of a client are not inconsistent.[3]

## A.

■ The American adversary system of criminal justice is not inquisitorial, but accusatorial. It consists of the presentation of evidence to the judge or jury by trained advocates, according to established rules, so that conflicting factual issues may be resolved to arrive at the truth. The integrity of the adversary system can be maintained only if both prosecution and defense counsel present reliable evidence to guide the trier of fact. Honesty and candor are essential to the fair and impartial administration of justice. Consequently, a lawyer has a professional duty not to perpetrate a fraud upon the court by knowingly presenting perjured testimony or other false evidence. *See* C.R.C.P. 220; *Code of Professional Responsibility*, DR 7–102(A)(4), EC 7–26; *ABA, Standards Relating to the Defense Function* § 4–7.5(a) (2d ed. 1980) (hereinafter cited as *ABA Defense Standards*); *People v. Radinsky*, 176 Colo. 357, 490 P.2d

951 (1971); *Herbert v. United States*, 340 A.2d 802 (D.C.1975); *People v. Pike*, 58 Cal.2d 70, 372 P.2d 656, 22 Cal.Rptr. 664 (1962). *See generally, M. Freedman, Lawyers' Ethics in an Adversary System*, 32 (1975). It is unprofessional conduct for a lawyer, while representing a client, to perpetrate or aid in the perpetration of a crime or a dishonest act. *See Code of Professional Responsibility*, DR 7–102(A)(7), (8). A lawyer who presents a witness knowing that the witness intends to commit perjury thereby engages in the subornation of perjury.[4] We will not permit the truthfinding process to be deflected by the presentation of false evidence by an officer of the court. Therefore, we hold that a lawyer may not offer testimony of a witness which he knows is false, fraudulent, or perjured.

■ A lawyer's belief that a witness intends to offer false testimony, however, must be based upon an independent investigation of the evidence or upon distinct statements by his client or the witness which support that belief. A mere inconsistency in the client's story is insufficient in and of itself to support the conclusion that a witness will offer false testimony. In this case, the record shows a substantial basis for defense counsel's knowledge that the alibi witnesses would present perjured testimony. The reports of the examining psychiatrists and the defendant's own conversations with his lawyer are inconsistent with the allegation that defense counsel was usurping the province of the jury by judging the credibility of the proposed alibi witnesses. Accordingly, counsel was correct in refusing to call the witnesses which the defendant located to support his spurious defense of alibi.

## B.

■ The court of appeals concluded that defense counsel departed from his role

---

**3.** At this juncture, we must distinguish this case from one where the accused client insists upon testifying in his own defense and makes known to counsel his intent to commit perjury. *See* Erickson, *The Perjurious Defendant: A Proposed Solution to the Defense Lawyer's*

*Conflicting Ethical Obligations to the Court and to His Client*, 59 Den.L.J. 75 (1981).

**4.** *See* section 18–8–501, *et seq.*, C.R.S.1973 (now in 1978 Repl. Vol. 8).

as an advocate and became an *amicus curiae* by continuing to represent Schultheis in light of their disagreement over calling the alibi witnesses. In its view, the continued representation deprived the defendant of the effective assistance of counsel guaranteed by the United States and Colorado Constitutions.[5] The weight of authority does not support such a conclusion. Defense counsel is not the alter-ego or mouthpiece of the accused, but is a trained advocate charged with representing an accused within the parameters of the Code of Professional Responsibility and according to his obligations and duties as an officer of the court. *ABA Defense Standards* § 4–1.1, Commentary at 4.9; *Johnson v. United States*, 360 F.2d 844 (D.C.Cir.1966) (Burger, J. concurring). It is the function of defense counsel, and not the defendant, to determine what witnesses will be called to support the defense case:

> "The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client." *ABA Defense Standards* § 4–5.2(b). *See also, ABA Defense Standards* § 4–3.1(b).

The defendant, therefore, could not compel his counsel to call witnesses to present a fabricated alibi.[6] When defense counsel makes an informed and intelligent decision as to the witnesses who are to be called, it is not error that the decision was based on ethical considerations. *See generally, People v. Herrera*, 188 Colo. 403, 534 P.2d 1199 (1975); *People v. McCormick*, 181 Colo. 162, 508 P.2d 1270 (1973); *Steward v. People*, 179 Colo. 31, 498 P.2d 933 (1972); *Martinez*

*v. People*, 173 Colo. 515, 480 P.2d 843 (1971); *Valarde v. People*, 156 Colo. 375, 399 P.2d 245 (1965).

▮ A refusal to call a particular·witness because of an obedience to ethical standards which prohibit the presentation of fabricated testimony does not constitute ineffective assistance of counsel. *See, e.g., Martinez v. People, supra*, quoting *United States v. Gutterman*, 147 F.2d 540 (2d Cir. 1945). *See generally*, Erickson, *The Perjurious Defendant: A Proposed Solution to the Defense Lawyer's Conflicting Ethical Obligations to the Court and to His Client*, 59 Den.L.J. 75 (1981); Erickson, *Standards of Competency for Defense Counsel in a Criminal Case*, 17 Amer.Crim.L.Rev. 233 (1979). The defendant's constitutional right to the effective assistance of counsel does not include the right to require his lawyer to perpetrate a fraud on the court. While a lawyer must protect and defend the interests of his client with all his skill and energy, he must always comply with his ethical obligations to the court. *State v. Henderson*, 205 Kan. 231, 468 P.2d 136 (1970). The high ethical standards required of defense counsel are not inconsistent with the zealous representation which is guaranteed an accused. Instead, they are designed to exemplify the truth-finding goal of our legal system. Unless trial counsel is deficient in the competent and professional representation of the accused, no constitutional infirmity exists. *See Valarde v. People, supra. See also, People v. Blalock*, 197 Colo. 320, 592 P.2d 406 (1979), *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir. 1978) (Hufstettler, J., specially concurring).

▮ An examination of the record in this case reveals no such deficiency. Defense counsel competently and zealously defended

---

**5.** *U.S.Const.* amend. VI; *Colo.Const.* Art. II, Sec. 16.

**6.** *See State v. Robinson*, 290 N.C. 56, 224 S.E.2d 174 (1976). According to *ABA Defense Standards* § 4–5.2(a), the accused has the exclusive right to make three decisions regarding the conduct of his case:

> "(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense

counsel. The decisions which are to be made by the accused after full consultation with counsel are:
> (i) what plea to enter;
> (ii) whether to waive jury trial; and
> (iii) whether to testify in his or her own behalf."

*See also*, Robinson, *The Perjury Dilemma in an Adversary System*, 82 Dickinson L.Rev. 545, 554–61 (1978).

Schultheis despite the accusations of inadequacy and lack of preparation which the defendant made against his appointed counsel. We therefore conclude that the defendant was not deprived of his constitutional right to the effective assistance of counsel.

## C.

■ Contrary to the court of appeals' decision, the foregoing analysis does not contemplate that a lawyer has an affirmative duty to withdraw from a case whenever his client desires to present perjured testimony through alibi witnesses. Regardless of the client's wishes, defense counsel must refuse to present the testimony of a witness that he knows is fabricated, and his continued role as defense counsel does not result in an ethical violation. When a serious disagreement arises between defense counsel and the accused, and counsel is unable to dissuade his client from insisting that fabricated testimony be presented by a witness, counsel should request permission to withdraw from the case in accordance with the procedures set forth in part II of this opinion.[7] If the motion to withdraw is denied, however, he must continue to serve as defense counsel. So long as counsel performs competently as an advocate, the accused is represented effectively and the integrity of the adversary system of justice is not compromised.

## II.

The court of appeals concluded that, in order to protect the confidentiality of privileged communications between defendant and counsel, a lawyer who seeks to withdraw from a case in which his client demands to present perjured testimony by a witness may not state the factual basis for the withdrawal. Instead, the court of appeals directed the lawyer to refer to the

specific provisions of the Code of Professional Responsibility that prohibit the use of perjured testimony or false evidence,[8] and held that the trial court must grant the lawyer's motion to withdraw.

■ We disagree with the court of appeals and conclude that, when the accused insists that counsel present fabricated testimony of a witness, counsel should not reveal to the trial judge the specific reasons for his motion to withdraw. In our view, the court of appeals also erred by imposing the requirement that the trial court grant a motion to withdraw; such a rule provides no safeguards against the wholesale manipulation of the judicial system by an unscrupulous defendant.

## A.

In part I of this opinion, we addressed the duties of defense counsel when he is unable to dissuade his client from insisting that fabricated testimony of a witness be presented. Even when counsel makes a motion to withdraw, however, the defendant is always entitled to an impartial trial judge, untainted by accusations that the defendant had insisted upon presenting fabricated testimony. Therefore, we hold that defense counsel, in a motion to withdraw, should never be required to cite the specific provisions of the Code of Professional Responsibility which prohibit the use of perjured testimony or false evidence. The court of appeals' rule is tantamount to a full disclosure to the court, since citing specific ethical provisions enables the court to determine that the factual basis for the motion to withdraw is the defendant's intention to present false alibi testimony. We do not approve of such a rule. Defense counsel should not, in any way, be required to divulge a privileged communication to the trial court during trial. *See Code of Professional Responsibility*, DR 4–101.

7. This procedure is consistent with DR 2–110(C)(1)(c) of the Code of Professional Responsibility, which provides that a lawyer may request permission to withdraw when his client "insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules."

8. In this case, the court of appeals did not specify which rules would have been correct to cite. However, DR 7–102(A)(4) and DR 4–101 of the Code of Professional Responsibility seem most appropriate to this situation.

When confronted with a client who insists upon presenting perjured testimony as to an alibi, counsel may only state, in the motion to withdraw, that he has an irreconcilable conflict with his client. An "irreconcilable conflict" may mean a conflict of interest, a conflict of personality, a conflict as to trial strategy, or a conflict regarding the presentation of false evidence. The integrity of the trial proceedings is thereby preserved.

Any disagreement between counsel and the accused on a decision to be made before or during trial, however, may be the subject of postconviction proceedings questioning the effectiveness of the lawyer's performance. It is not sufficient to determine the matter solely on the strength of the memories of the lawyer and client, which are invariably in conflict if the issue arises. Therefore, although no record of disagreement is required for the trial judge, counsel should proceed with a request for a record out of the presence of the trial judge and the prosecutor if the court denies the motion to withdraw:

> "If a disagreement on significant matters of tactics or strategy arises between the lawyer and the client, the lawyer should make a record of the circumstances, the lawyer's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship." *ABA Defense Function Standards* § 4–5.2(c).

Appellate review of the private record, as well as the provisions of Crim.P. 35(c), which provides for postconviction review and relief, are adequate mechanisms to protect the accused against counsel's unwarranted judgment that the proposed testimony by a witness is false.

In this case, we recognize that counsel, by wrongfully disclosing to the trial court the nature of his disagreement with Schultheis, did not follow the procedure which we recommend. We do not endorse counsel's comments to the trial court. In the discourse between the trial judge, defense counsel, and Schultheis, counsel was at first vague in describing his refusal to call the witnesses requested by the defendant. It was only after counsel requested the defendant's permission to reveal to the court the basis of his decision not to call the alibi witnesses that he stated his refusal to put on evidence he knew was fabricated. Counsel thereafter sought and received permission to make a private record to reveal the specific factual basis underlying the disagreement. The entire discourse was out of the presence of the jury. Although counsel is generally not permitted to disclose information imparted to him by the client or acquired during the professional relationship, we do not believe that, under the circumstances, there was a breach of the attorney-client privilege. Further, as discussed in part I of this opinion, counsel's conduct did not deprive the defendant of the effective assistance of counsel.

### B.

The court of appeals also erred in requiring the trial court to grant a lawyer's motion to withdraw when counsel and the defendant disagree over the presentation of alibi testimony. Such a conclusion is replete with dire practical consequences. A mandatory withdrawal before trial may not be possible because the confrontation with the client does not occur until the time of trial, or because other counsel cannot be obtained without continuing the trial date. In addition, if each successive lawyer was faced with an ethical disagreement with the accused, mandatory withdrawal would always allow the defendant an unlimited number of continuances. This situation could ultimately result in a perpetual cycle of eleventh-hour motions to withdraw.[9] If the trial court was required to grant every motion to withdraw, new counsel might fail to recognize the problem of fabricated testimony by alibi witnesses, and false evidence

---

**9.** The trial judge recognized these practical problems and stated, in denying defense counsel's motion to withdraw, that no matter who else he could have appointed, the same predicament would occur in the future.

would be presented to the court. Or, counsel may view his ethical obligation as requiring neither a withdrawal nor any indication that the problem of potential false evidence exists. We cannot sanction either result, for in both cases, fraud is committed upon the court.

 A decision as to whether counsel should be permitted to withdraw must lie within the sound discretion of the trial judge. As long as the trial court has a reasonable basis for believing that the lawyer-client relation has not deteriorated to the point where counsel is unable to give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel. *State v. Henderson, supra; People v. Williams,* 2 Cal.3d 894, 471 P.2d 1008, 88 Cal.Rptr. 208 (1970). Therefore, a disagreement between defense counsel and the accused concerning counsel's refusal to call certain witnesses is not sufficient to require the trial judge to grant the motion to withdraw and replace defense counsel. *See State v. Robinson,* 290 N.C. 56, 224 S.E.2d 174 (1976); *People v. Williams, supra.* Under the circumstances, the denial of the motion to withdraw did not deprive the accused of the effective assistance of counsel. *People v. Durham,* 70 Cal.2d 171, 449 P.2d 198, 74 Cal.Rptr. 262 (1969).

In making the decision whether to grant counsel permission to withdraw, the trial court must balance the need for the orderly administration of justice with the fact that an irreconcilable conflict exists between counsel and the accused. In doing so, the court must consider the timing of the motion, the inconvenience to witnesses, the period of time elapsed between the date of the alleged offense and trial, and the possibility that any new counsel will be confronted with the same irreconcilable conflict. The decision of the trial court to deny a motion to withdraw will not be disturbed absent a clear abuse of discretion.

The primary responsibility of the court is the orderly administration of justice. *See United States v. Jones,* 512 F.2d 347 (9th Cir. 1975); *United States v. McMann,* 386

F.2d 611 (2d Cir. 1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1045, 19 L.Ed.2d 1153 (1967). Under the circumstances in this case, the trial court did not abuse its discretion by requiring counsel to remain as the defendant's advocate.

Accordingly, we reverse the judgment of the court of appeals, and remand to the court of appeals with directions to affirm the defendant's conviction for first-degree murder.