474 So.2d 309 (1985)
Russell J. SANBORN, Petitioner,
v.
The STATE of Florida, Respondent.
No. 85-949.
District Court of Appeal of Florida, Third District.
July 16, 1985.
Rehearing Denied September 9, 1985.
*310 Ellis S. Rubin, Miami, for petitioner.
Jim Smith, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., for respondent.
Before NESBITT, DANIEL S., PEARSON and FERGUSON, JJ.
NESBITT, Judge.
Through a petition for writ of certiorari, the defendant's attorney, Ellis Rubin, requests this court to quash the trial court's order denying his motion to withdraw as defense counsel.
The defendant is charged with first degree murder and a number of other crimes. In April 1984, the public defender was appointed to represent the defendant. In July 1984, the defendant requested that a special public defender be appointed due to conflicts with his then-attorney. The court granted the defendant's request and appointed the attorney of the defendant's choosing. A few weeks later, the newly appointed attorney appeared before the court and asked permission to withdraw, claiming that as a one-man office, he could not adequately prepare a defense in the case. The court granted this request and appointed a third defense attorney. The case proceeded toward trial, scheduled for April 29, 1985, until the defendant decided he could no longer communicate with his attorney and, in February 1985, requested a fourth attorney, Rubin, be appointed. *311 The trial court denied this request. Subsequently, Rubin appeared before the court and requested to be substituted as defense counsel as he had been retained by the defendant's mother (apparently for no fee). Rubin represented to the court that he would be ready for trial on April 29, 1985. After several assurances from the defendant that he would continue with Rubin as his counsel, the court allowed the substitution.
On Thursday and Friday, April 25-26, 1985, Rubin confronted the defendant and his mother (an alleged key witness) "with facts and the results of physical evidence tests gathered through discovery" and the defendant and his mother "confided new and contradictory details and heretofore unknown explanations" to Rubin. In addition, the defendant "issued certain instructions to Rubin as to the strategy and tactics to be employed at the trial." Based on these events, Rubin petitioned the trial court on April 29, 1985, just prior to jury selection, to withdraw as defense counsel. The defendant did not oppose the withdrawal. During argument on the motion, the court asked Rubin to reveal the factual matters underlying his motion. The defendant refused to consent to the disclosure and, therefore, Rubin correctly upheld his ethical obligation and refused to reveal the confidential communications. See Fla.Bar Code Prof.Resp., D.R. 4-101. Following argument, the trial court denied Rubin's motion to withdraw and ordered him to proceed to trial.[1]
It is apparent from the record before us that the basis for Rubin's motion is that the defendant has directed Rubin to present evidence and/or testimony and argue facts which Rubin knows to be false. We recognize that Rubin, as an attorney, is placed in a serious dilemma between his role as an advocate of his client's best interests and as a guardian of the integrity of the judicial system in these circumstances. The ethical obligations of an attorney require him to represent his client zealously, but this zealous representation must stay within the bounds of the law. Fla.Bar Code Prof.Resp., Canon 7. Looking first at Rubin's actions after learning of the "new ... details... and explanations" and being directed by defendant to proceed in a particular manner, we are of the opinion that Rubin has acted according to the moral and ethical obligations required of him as a member of the legal profession.
In representing a client, an attorney is held to strict requirements under the law and Florida's Disciplinary Rules which prohibit the use of fraudulent, false or perjured testimony or evidence. A lawyer may not knowingly use perjured testimony or false evidence or make a false statement of law or fact. In addition, a lawyer may not participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false; nor may he counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent. Fla.Bar Code Prof.Resp., D.R. 7-102(A). See also Fla.Bar Code Prof. Resp., D.R. 1-102; The Florida Bar v. Agar, 394 So.2d 405 (Fla. 1980). A lawyer should not make any prefatory statement before a tribunal in regard to the purported facts of the case on trial unless he believes that his statement will be supported by admissible and credible evidence. Further, a lawyer should not by subterfuge put matters before a jury which the jury should not properly consider. See Fla.Bar Code Prof.Resp., E.C. 7-25.
The law requires honest, loyal, genuine, and faithful representation of a defendant by his attorney, whether employed or court-appointed. A lawyer's professional duty requires him to be honest with the court and to conform his conduct to recognized legal ethics in protecting the interests of his client. Counsel, however, is never under a duty to perpetrate or aid in the perpetration of a crime or a dishonest act to free his client. *312 Neither is he required to stultify himself by tendering evidence or making any statement which he knows to be false as a matter of fact in an attempt to obtain an acquittal at any cost. In conducting his task, counsel should be guided by the standard [of using] "all fair and honorable means" ... in discharging the duty ... "to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law." [citations omitted]
State v. Henderson, 205 Kan. 231, 468 P.2d 136, 140 (1970). Accord Carr v. State, 180 So.2d 381 (Fla. 2d DCA 1965). See also Thornton v. United States, 357 A.2d 429, 437-38 (D.C.App.), cert. denied, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976).
The high ethical standards required of a criminal defense attorney are not inconsistent with the zealous representation which is guaranteed an accused and which the attorney is obligated to provide. Instead, both are designed to achieve the truth-finding goal of our legal system. People v. Schultheis, ___ Colo. ___, 638 P.2d 8, 12 (1981) (En Banc). See also Henderson, 468 P.2d at 141. Our legal system provides for the adjudication of disputes governed by rules of substantive, evidentiary and procedural law. The objective of our system is to ascertain an accused's guilt or innocence in accordance with established rules of evidence and procedure designed to develop the facts truthfully and fairly. An adversary presentation counters the natural human tendency to judge too swiftly in terms of the familiar that which is not yet fully known. The duty of a lawyer to his client and his duty to the legal system are the same: to represent his client zealously within the bounds of the law. See Fla.Bar Code Prof.Resp., E.C. 7-19; Schultheis, 638 P.2d at 12. Henderson, 468 P.2d at 141.
The foregoing analysis does not mandate that a trial court allow an attorney to withdraw from a case whenever his client insists on presenting false testimony or evidence through either the client's own testimony or another witness' testimony. Regardless of the client's wishes, defense counsel must refuse to aid the defendant in giving perjured testimony and also refuse to present the testimony of a witness that he knows is fabricated. When a serious disagreement arises between defense counsel and the accused, and counsel is unable to dissuade his client from insisting that fabricated testimony be presented, counsel should request permission to withdraw from the case. If the motion to withdraw is denied, however, he must continue to serve as defense counsel. So long as the attorney performs competently as an advocate under the circumstances, the defendant is represented effectively and the integrity of the adversary system of justice is not compromised. Schultheis, 638 P.2d at 13. See State v. Lee, 142 Ariz. 210, 689 P.2d 153, 163 (1984) (En Banc).
Rubin does not face such a serious dilemma with regard to the defendant's instructions regarding trial strategy and tactics. The power to decide questions of trial strategy and tactics ultimately rests with counsel. Lee, 689 P.2d at 158. One such tactical, strategic decision concerns counsel's determination of what witnesses to call and what evidence to present. Id.; Schultheis, 638 P.2d at 12. Thus, a defendant cannot compel his counsel to call witnesses to present a fabricated alibi or any other false testimony, nor compel the introduction of false evidence. Schultheis, 638 P.2d at 12. See People v. Williams, 2 Cal.3d 894, 88 Cal. Rptr. 208, 471 P.2d 1008 (1970) (In Bank), cert. denied, 401 U.S. 919, 91 S.Ct. 903, 27 L.Ed.2d 821 (1971); State v. Robinson, 290 N.C. 56, 224 S.E.2d 174 (1976). See also United States v. Curtis, 742 F.2d 1070, 1074-75 (7th Cir.1984). Since a defendant's right to effective assistance of counsel does not include the right to require his attorney to perpetrate a fraud on the court, it is generally considered that a refusal to call a particular witness because of obedience to ethical standards which prohibit the presentation of fabricated testimony does not constitute ineffective assistance of counsel. See *313 Schultheis, 638 P.2d at 12 and authorities cited. In fact, the Supreme Court of Arizona has held that succumbing to a client's demand to elicit obvious perjurious testimony from witnesses amounts to ineffective assistance of counsel since the attorney, thereby, fails to fulfill his duty to make the tactical, strategic decisions at trial. Lee, 689 P.2d at 159.
Tactical decisions require the skill, training and experience of the advocate. A criminal defendant, generally inexperienced in the workings of the adversarial process, may be unaware of the redeeming or devastating effect a proffered witness can have on his case. Accordingly, in the present case, Rubin should disregard any instructions from the defendant concerning trial strategy and tactics if Rubin should determine that following the instructions would be either contrary to the defendant's best interest or contrary to Rubin's ethical obligations as an attorney.
The worst dilemma that could be facing Rubin in the present case is that his client, the defendant, insists upon testifying falsely at trial.[2] If at trial, however, there remains a chance of perjured testimony being presented by the defendant, formulas have been proposed which preserve the sanctity of the tribunal and the ethical standards that Rubin, as an officer of the court, has vowed to uphold. The procedure most often sanctioned in this situation is to allow the defendant to take the stand and deliver his statement in narrative form; the defendant's attorney does not elicit the perjurious testimony by questioning nor argue the false testimony during closing argument.[3]See Coleman v. State, 621 P.2d 869, 881 (Alaska 1980), cert. denied, 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981); People v. Salquerro, 107 Misc.2d 155, 433 N.Y.S.2d 711, 714 (N.Y. Sup. Ct. 1980); State v. Covington, 279 S.C. 274, 305 S.E.2d 578, 580 (1983). The attorney, of course, is not precluded from arguing sound, non-perjurious testimony or attacking the state's case. Under this procedure, a defendant is afforded his right to speak to the jury under oath and the constitutional right to assistance of counsel is preserved, but the defense attorney is protected from participating in the fraud. Under such a formula, the responsibility for committing or not committing fraud on the tribunal lies with the defendant, and not with his attorney, and the jury will decide whether the defendant's testimony is credible. Salquerro, 433 N.Y.S.2d at 713-14.
Rubin argues, however, that such procedure would deny the defendant effective assistance of counsel. We disagree. Although a defense attorney has an ethical duty to zealously represent his client, that duty must be met in conjunction with, rather than in opposition to, other professional obligations. The ethical strictures under which an attorney acts forbid him to tender evidence or make statements which he knows to be false. Thornton, 357 A.2d at 437-38. It is axiomatic that the right of a client to effective assistance of counsel in any case does not include the right to compel counsel to knowingly assist or participate in the commission of perjury or the creation of false evidence. Salquerro, 433 N.Y.S.2d at 714 (quoting ABA Informal *314 Opinion 1314). See also Coleman; Thornton; Covington; Maddox v. State, 613 S.W.2d 275, 284 (Tex. Crim. App. 1980). Certainly, the constitutional right to effective assistance of counsel does not encompass the right to an unethical attorney when a criminal defendant thinks it is in his best interest to present false evidence.
The trial court recognized that allowing Rubin to withdraw and appointing a fifth defense attorney would not alleviate the problem. If withdrawal were allowed every time a lawyer was faced with an ethical disagreement with the accused, the ultimate result could be a perpetual cycle of eleventh-hour motions to withdraw and an unlimited number of continuances for the defendant. In addition, new counsel might fail to recognize the problem of fabricated testimony and false evidence would be presented to the court; or, perhaps the defendant might eventually find an attorney who lacks ethical standards and who would knowingly present and argue false evidence. Neither result is acceptable since fraud is committed upon the court in either case. Schultheis, 638 P.2d at 14-15; Salquerro, 433 N.Y.S.2d at 713. See also Coleman, 621 P.2d at 882; Henderson, 468 P.2d at 142; Covington, 305 S.E.2d at 579. As the New York court has stated:
If the motions to withdraw and recuse are granted, substitution of court and counsel, unaware of the possibility of perjury, may overtly facilitate, or appear to condone, a fraud upon the court. Such substitution procedures would effectively cloak the problem; however, this ostrich-like approach would do little to resolve it.
Salquerro, 433 N.Y.S.2d at 713.
For this reason, trial courts are given broad discretion to determine whether a motion to withdraw should be granted in situations like the present one. The primary responsibility of the court is to facilitate the orderly administration of justice. See Schultheis, 638 P.2d at 15 and cases cited. In making the decision of whether to grant counsel permission to withdraw, the trial court must balance the need for the orderly administration of justice with the fact that an irreconcilable conflict exists between counsel and the accused. In doing so, the court must consider the timing of the motion, the inconvenience to witnesses, the period of time elapsed between the date of the alleged offense and trial, and the possibility that any new counsel will be confronted with the same conflict. Schultheis, 638 P.2d at 15. Accord Lee, 689 P.2d at 163; Covington, 305 S.E.2d at 579. As long as the trial court has a reasonable basis for believing that the attorney-client relation has not deteriorated to a point where counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in denying a motion to withdraw. See Henderson, 468 P.2d 141; Schultheis, 638 P.2d at 15. The decision of a trial court to deny a motion to withdraw will not be disturbed absent a clear abuse of discretion. Under the circumstances of the present case, we find that the trial court did not abuse its discretion by requiring Rubin to remain as the defendant's advocate.
We approve the Arizona supreme court's position on this troublesome problem that many criminal defense attorneys are confronted with:
If "irreconcilable conflicts" arise between a particular defendant and a string of attorneys, we trust the trial court will, when the orderly administration of justice requires, refuse permission to withdraw. In such a case, counsel must, within the confines of the law and his or her professional duties and responsibilities, present the client's case as well as he or she can. A criminal defendant is entitled to full and fair representation within the bounds of the law. If he or she is dissatisfied with the representation to which he or she is entitled in our system, self-representation is available. Counsel must not compromise the integrity of his or her client, the court, or the legal profession by exposing a client's proclivities or by engaging in unethical conduct at a client's request.
Lee, 689 P.2d at 163-64. We note that although this is a case of first impression *315 in Florida, most courts that have considered this problem in other jurisdictions have resolved it in the same manner as we do here. See, e.g., Lee; Schultheis; Thornton; State v. Whiteside, 272 N.W.2d 468 (Iowa 1978);[4]Henderson; Salquerro; Robinson; Covington. Cf. Anderson v. State, 439 So.2d 961, 962 (Fla. 4th DCA 1983) ("The trial judge did not abuse his discretion when he denied counsel's eleventh hour motion to withdraw based on a mere speculation as to the nature of the victim's testimony.")
Accordingly, the petition for writ of certiorari is denied.
DANIEL S. PEARSON, Judge, concurring.
I concur in the decision to deny the petition for certiorari and thereby uphold the trial court's order denying Mr. Rubin's motion to withdraw as counsel for Sanborn. I believe, however, that the majority's dicta, "deciding" that Rubin will be both ethical and effective if, at trial, he disowns defense testimony he perceives to be perjurious, constitutes an uncalled for advisory opinion.
According to Rubin, the trial court's ruling forces him to choose between his obligation to further the administration of justice and his obligation to provide his client with effective assistance. The majority attempts to assure Rubin that he has no dilemma, and tells Rubin that if he conducts himself in the forthcoming trial in the manner prescribed by the majority, he will be both ethical and effective. Yet, there is now, and there has been for some time, a very serious question whether an attorney who, attempting to live up to the code of professional responsibility, refuses to elicit or argue his client's known perjurious defense, nonetheless provides effective assistance of counsel. See Whiteside v. Scurr, 744 F.2d 1323 (8th Cir.1984); Freedman, Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions, 64 Mich.L.Rev. 1469 (1966); Noonan, The Purposes of Advocacy and The Limits of Confidentiality, 64 Mich.L.Rev. 1485 (1966); Bress, Professional Ethics in Criminal Trials: A View of Defense Counsel's Responsibility, 64 Mich.L.Rev. 1493 (1966). Hopefully, the United States Supreme Court, which, as the majority notes, has granted certiorari in the Whiteside case, see majority opinion at 315 n. 4, will answer this question. For now, I think we should wait and see what Rubin does at trial and whether Sanborn is convicted. In the event Sanborn is convicted, he, through other counsel, will likely present to a court, in the setting of an actual controversy, his contention that although Rubin may have behaved ethically, he was ineffective. Obviously, that contention is not before us now.
NOTES
[1] The trial court gave Rubin until the following day to seek review in this court. Rubin filed his petition for writ of certiorari in this court and we have stayed the proceedings below pending this decision.
[2] We emphasize that a lawyer's task is not to determine guilt or innocence, but only to present evidence so that others  either court or jury  can do so. A lawyer, therefore, should not decide what is true and what is not unless there is compelling support for his conclusion. State v. Whiteside, 272 N.W.2d 468, 470 (Iowa 1978). Mere suspicion or inconsistent statements by the defendant alone are insufficient to establish that the defendant's testimony would have been false. Whiteside v. Scurr, 744 F.2d 1323, 1328 (8th Cir.1984), cert. granted, ___ U.S. ___, 105 S.Ct. 2016, 85 L.Ed.2d 298 (1985).
[3] The seventh circuit recognized this procedure in Curtis, 742 F.2d at 1076-77 n. 4. The court, however, took the approach that although a defendant has a constitutional right to take the stand and testify truthfully in his own behalf, counsel may refuse to allow a defendant to testify when it is clear the defendant will testify perjuriously. The court did not discuss the possibility of the defendant testifying truthfully in part. By quoting the procedure suggested by the ABA Standards for Criminal Justice in a footnote, however, the court impliedly indicated that a defendant may have a constitutional right to take the stand in such a situation.
[4] We note that the Iowa supreme court's decision on this issue in Whiteside has been effectively overruled by the Eighth Circuit Court of Appeals on a petition for writ of habeas corpus. Whiteside v. Scurr, 744 F.2d 1323 (8th Cir.1984). The Eighth Circuit, however, is sharply divided on the issue. The panel opinion withstood a motion for rehearing en banc by a five-four vote which produced four separate opinions. Whiteside v. Scurr, 750 F.2d 713 (8th Cir.1984) (denying motion for rehearing en banc). The Supreme Court has recently granted certiorari in the case, Nix v. Whiteside, ___ U.S. ___, 105 S.Ct. 2016, 85 L.Ed.2d 298 (1985), (certiorari granted), and, therefore, attorneys may soon be given some definitive guidance as to the proper action to be taken when their ethical obligations seemingly come in conflict with their client's constitutional rights.