490 So.2d 1001 (1986)
Ellis S. RUBIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-2370.
District Court of Appeal of Florida, Third District.
June 17, 1986.
*1002 Ellis S. Rubin, in pro. per.
Jim Smith, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before HENDRY, HUBBART and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from an order holding the appellant, an attorney, in contempt for refusing to comply with the trial court's earlier order requiring the attorney to represent his client, a criminal defendant accused of murder, in a trial scheduled to begin immediately. We affirm.
Nearly a year before the contempt order was entered, this same attorney representing the same criminal defendant (one Russell Sanborn) in the same murder case asked the same trial judge for permission to withdraw as Sanborn's defense counsel, the request being made just before jury selection was to begin. Although clothed in language ostensibly designed to preserve the client's confidential communications to his attorney (e.g., Rubin alleged that the defendant "confided new and contradictory details and heretofore unknown explanations" and "issued certain instructions to Rubin as to the strategy and tactics to be employed at the trial"), Rubin's message to the court was that the defendant had insisted upon testifying falsely at trial. Accordingly, Rubin asked that he be excused from further representation of the client. The trial court denied the motion to withdraw and ordered Rubin to proceed to trial.[1]
Rubin sought certiorari review of that order. This court denied his petition and in *1003 so doing assured Rubin that he would carry out his ethical obligations as an attorney (as well as render all the effective assistance to the defendant to which the defendant was entitled) by allowing "the defendant to take the stand and deliver his statement in narrative form" and by refusing to "elicit the perjurious testimony by questioning ... [or to] argue the false testimony during closing argument." Sanborn v. State, 474 So.2d 309, 313 (Fla. 3d DCA 1985). Rubin's motions for rehearing and rehearing en banc were denied, and he sought no further review in any other court, state or federal. Despite this, when upon the issuance of our mandate the case was restored to the trial calendar, Rubin again sought to withdraw on the same ground as before. The trial court, scrupulously adhering to its initial ruling and our mandate, again denied Rubin's motion and again ordered him to proceed to trial. When Rubin refused, the contempt order which gives rise to this appeal was entered.
The law of the case, established by this court in Sanborn v. State, 474 So.2d 309, is that even if Sanborn were to testify in the manner Rubin claimed he would, Rubin could ethically represent Sanborn by refusing to specifically elicit or argue such testimony. Rubin contends, however, as he did before the trial court, that our decision in Sanborn v. State is, in his view, wrong, and, because he firmly holds to that view, he disobeyed the lower court's order to proceed.
Rubin is certainly free to disagree and maintain his personal view of what the law is or should be, or indeed his personal view of what some higher law provides.[2] It is, however, the decision of the mortal judges in Sanborn v. State, having not been stayed, much less set aside, by some higher court with jurisdiction over the matter, which Rubin must obey. Thus, even if, arguendo, it might have been later determined that Sanborn v. State was wrongly decided, Rubin's contumacious refusal to follow the undisturbed order to proceed would be nonetheless punishable as a direct contempt. As will be seen, this rule of law is essential to the maintenance of our system of laws as a whole.
It is well settled in this state, and elsewhere, that where a court acting with proper jurisdiction and authority renders an order, an aggrieved party's failure to abide by the order may be punished by contempt even if the order is ultimately found to be erroneous. Health Clubs, Inc. v. State ex rel. Eagan, 377 So.2d 28 (Fla. 5th DCA 1979), appeal dismissed sub nom., Cataldo v. Eagen, 383 So.2d 1191 (Fla. 1980) (appellant's failure to obey injunction found to be erroneous as overbroad, punishable by contempt). See also State ex rel. Buckner v. Culbreath, 147 Fla. 560, 3 So.2d 380 (1941); State ex rel. Pearson v. Johnson, 334 So.2d 54 (Fla. 4th DCA 1976); Friedman v. Friedman, 224 So.2d 424 (Fla. 3d DCA 1969); Annot., Right to Punish for Contempt for Failure to Obey Court Order or Decree Either Beyond Power or Jurisdiction of Court or Merely Erroneous, 12 A.L.R.2d 1059 (1950). The reason behind the rule requiring obedience to court orders regardless of their alleged invalidity is that the need for obedience to a court order far outweighs any detriment to individuals who may be temporarily victimized by the order, even if erroneous.
"If a party can make himself a judge of the validity of orders which have been issued for the protection of property rights, and by his own act of disobedience can set them aside, then are the courts impotent, and what the Constitution of the state ordains as the judicial power becomes a mere mockery.

*1004 "This power has uniformly been held indispensable to enable the court to enforce its judgments and to execute its orders necessary to the due administration of law and the protection of the rights of citizens."

Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468 at 476, 134 So. 529 at 533 (1931).
Rubin's personal view that the decision in Sanborn is erroneous (a far cry from a judicial declaration that the decision is erroneous) quite obviously cannot excuse his disobedience.
This power to punish disobedience of court orders through contempt is unique to the judicial branch of government. As one court explained:
"The criminal contempt exception requiring compliance with court orders ... is not the product of self-protection or arrogance of Judges. Rather it is born of an experience-proved recognition that this rule is essential for the system to work... . Disobedience to a legislative pronouncement in no way interferes with the legislature's ability to discharge its responsibilities (passing laws). The dispute is simply pursued in the judiciary and the legislature is ordinarily free to continue its function unencumbered by any burdens resulting from the disregard of its directives. Similarly, law enforcement is not prevented by failure to convict those who disregard the unconstitutional commands of a policeman.
"On the other hand, the deliberate refusal to obey an order of the court without testing its validity through established processes requires further action by the judiciary, and therefore directly affects the judiciary's ability to discharge its duties and responsibilities. Therefore, `while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory.'"

United States v. Dickinson, 465 F.2d 496, 510 (5th Cir.1972), cert. denied, 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed.2d 223 (1973).
Our system of justice simply cannot function if individuals  however strong their views  are free to ignore court orders. Therefore, that Rubin may believe that his position is virtuous and his disobedience moral  or that his view may some day, in some other case,[3] prevail  does nothing to excuse his refusal to comply with the court's order to proceed with the defense of Sanborn. In Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), a majority of the United States Supreme Court, acknowledging the contemnors' strong and principled belief that an order enjoining them from assembling in the streets without a required permit flagrantly infringed upon their constitutional rights, nonetheless felt constrained to uphold the contempt convictions of the civil rights marchers who disobeyed the injunction. Recognizing that adherence to law in a constitutional system is central to the existence of law itself, the Court wrote:
"The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give *1005 abiding meaning to constitutional freedom."

Walker v. City of Birmingham, 388 U.S. at 320-21, 87 S.Ct. at 1832, 18 L.Ed.2d at 1219-20 (footnote omitted).
Surely Rubin  one trained in the law  should know that if persons may with impunity disobey the law, it will not be long before there is no law left to obey.[4]
Affirmed.
NOTES
[1] Because the withdrawal of an attorney from a pending court action potentially affects the rights of the client, other parties to the action, and, in a criminal case, the public interest, the withdrawal must be approved by the court, Fla. R.Jud.Admin. 2.060(i), and an attorney may not withdraw without such approval, Fla. Bar Code Prof. Resp. D.R. 2-110(A). In the present case, the trial court, noting that Rubin was the fourth attorney to represent Sanborn, recognized in its order the interests at stake:

"The Court must and has considered the timing of counsel's motion, the inconvenience to witnesses, the period of time elapsed between the date of the alleged offense and the scheduled trial date, and, most importantly, the possibility and probability that any new counsel will be confronted with the same conflict."
While Sanborn may have agreed to Rubin's withdrawal and a further postponement of the trial, neither the State, the public, nor the court was bound by Sanborn's acquiescence. See generally Fisher v. State, 248 So.2d 479, 484 n. 5 (Fla. 1971) (noting public interest factor in withdrawal from criminal action).
[2] When asked if there was any reason the trial court should not adjudge him in contempt and punish him, Rubin's sole answer was:

"Yes, your Honor, I am obeying the Code of Professional Responsibility. There is not only an irreconcilable conflict between my client and myself, but between myself and the finding of the District Court of Appeal. I believe that I must rely on not only the Code of Professional Responsibility but my own code of honor and integrity. I have to live with myself and I could not live with myself knowing that I'm deceiving a jury with or without court approval."
[3] As we have already noted, Rubin sought no further relief from our decision in Sanborn after we denied rehearing and rehearing en banc. Sanborn now represents the law in this district until changed by a later en banc decision, or by a decision of the Supreme Court of Florida.
[4] Rubin urges that if he followed our decision in Sanborn, he would have been exposed to prosecution for aiding and abetting Sanborn's perjury and Bar grievance proceedings. This argument is simply another way of saying that our decision in Sanborn was erroneous and is thus no defense to the contempt order. We do, however, note in passing that as a general rule a person's good faith reliance on a court order  here, the decision in Sanborn  is a complete defense to criminal prosecution, cf. Malley v. Briggs, 475 U.S. ___, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (good faith reliance on warrant); Wright v. State of Florida, 495 F.2d 1086 (5th Cir.1974) (good faith reliance on wiretap order); § 934.10, Fla. Stat. (1985) (codification of rule that good faith reliance on court order is complete defense to illegal wiretap prosecution); § 826.02(4), Fla. Stat. (1985) (codification of rule that good faith reliance on invalid divorce decree is complete defense to bigamy prosecution), and that, although only the Florida Supreme Court has jurisdiction over disciplinary matters, good faith reliance on a court order will likely not result in Bar discipline, cf. Ciravolo v. The Florida Bar, 361 So.2d 121 (Fla. 1978) (although trial court had no authority to immunize attorney from disciplinary proceedings, its decision to do so, justifiably based on Florida Supreme Court precedent, would be enforced).