494 So.2d 206 (1986)
THE FLORIDA BAR, Complainant,
v.
Steven F. JACKSON, Respondent.
No. 66777.
Supreme Court of Florida.
September 18, 1986.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and Richard B. Liss, Bar Counsel, Ft. Lauderdale, for complainant.
Sandra J. Salter Jackson of Jackson & Jackson, Coral Springs, for respondent.
PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar and the petition of respondent, Steven F. Jackson, for review of the referee's report in this matter. We have jurisdiction. Art. V, § 15, Fla. Const.
The Bar's complaint is based on respondent's refusal to appear for a federal criminal trial on a religious holiday, which resulted in a judgment of contempt being entered against him. The pertinent facts as set forth by the United States Court of Appeals, Eleventh Circuit, in its opinion affirming the judgment of contempt are as follows:
Appellant was the lawyer for Howard Jones, one of nine codefendants in a federal criminal case. On February 27, 1984, the district court held a calendar call in order to set the trial date. The parties estimated that the trial would last *207 three to four weeks. At that time, the court inquired as to the dates in April or May when the lawyers for the various defendants would be unavailable. Jackson responded: "I don't have any vacation planned, but I do have a trial in New York, first week of April. After that, I have no objections to any of the time in those two months." The judge set the trial to begin on Monday, April 16, 1984.
On April 12, 1984, the Thursday preceding the Monday on which the trial was to begin, Jackson's brother, Jeffrey Jackson, attended a pretrial hearing in his brother's place. Jeffrey Jackson orally advised the district court that Steven Jackson was ready for trial, but that he would not be available for trial Tuesday and Wednesday of the next week and Monday and Tuesday of the following week because he would be observing Passover, a Jewish holiday. The judge responded that he had never before received such a request, but that he always recessed court by sundown so that everyone could be home in time for Passover. Jeffrey Jackson said that he would so advise his brother.
On the following Monday, the day the trial was scheduled to begin, Jackson filed a written motion to stay all proceedings on that Tuesday and Wednesday and the following Monday and Tuesday. This motion was based on the free exercise clause of the first amendment. Jackson told the court that he was an observant Jew, that these days were the first and last two days of Passover which were equal in station to the highest of the Jewish holy days, and that it had been his practice since childhood to follow Jewish law that no work be done on those days. Jackson further stated that if the trial proceeded in his absence his client would be unduly prejudiced. The court denied Jackson's motion, but stated that the court would adjourn early for Passover. The court explained that with a nine-defendant, three to four week trial, the case could not be rescheduled at that point in time. In response Jackson stated: "I just want to inform the court that with due deference to your ruling, I will not be here tomorrow and Wednesday or Monday and Tuesday of next week." The court warned Jackson that it would consider whether to send a marshal to bring him.
Following the lunch recess that day, the court asked Jackson's client, Jones, whether he would object to one of the other lawyers filling in on the days that Jackson was absent. Jones stated that he had no objection. However, after Jones conferred with Jackson, Jackson informed the court that he could not adequately represent Jones unless he was present throughout the proceedings, and that Jones would object to another lawyer filling in. The court then suggested that Jackson could get a transcript of the missed testimony. Jackson declined this offer. The other defendants' lawyers explored the possibility of one of them representing Jones. Again, Jackson found this alternative unacceptable. The court also offered to recess at four p.m. or anytime during the day that Jackson had to attend religious services. Jackson maintained that he could not work at all during these days. The court specifically ordered Jackson to be at court the following day or he would be subject to contempt and criminal sanctions.
At around four o'clock that afternoon, after the jury had been partially selected, the court recessed so that any lawyers or jurors who wished to do so could return home for Passover. The court again told Jackson that it would not grant a stay given the size and expense of the trial. The court urged Jackson to appear and stated that it would consider a failure to attend in direct defiance of a court order. Jackson again advised the court that he would not attend the trial the next day:
JACKSON: With all due respect, Your Honor, I answer to a higher authority than this court in this matter and I will not be here tomorrow.
JUDGE: Well, act at your peril.
The next morning, the trial resumed and the jury selection continued. Jackson *208 did not appear. The court found that Jackson had committed contempt twice on April 16 when he stated on two occasions that he would not obey the court's order to appear; the court also found that the contempt had been ratified that morning when Jackson failed to appear. The court stated that it would issue a certificate of contempt as soon as it was typed and would then give Jackson an opportunity to be heard. Next, the court addressed the problem of Jones' representation. After some delay, the court was able to find a lawyer who would agree to represent Jones at that late date. That evening, the court issued a certificate of contempt finding that Jackson had committed contempt twice on April 16 and that this contempt had continued on April 17. The certificate stated that the court did not doubt Jackson's representation of his religious practices and concluded:
Despite what attorney Jackson thinks about this matter, it is not a case involving Mr. Jackson's exercising of his religious practices. It is a case of an officer of the court who failed to advise the court in ample time of his scheduled conflicts, especially after having assured the court when the trial date was selected that he had none in April or May. His defiance of the court's order denying his motion for stay constitutes contempt.
The order also set a hearing on the matter for April 19.
Jackson appeared on April 19, represented by counsel. The judge stated that he had filed the certificate of contempt, but would afford Jackson the opportunity to explain his conduct at that time. Jackson's counsel argued that the court should vacate its certificate of contempt because the court had not afforded Jackson an opportunity to be heard prior to finding him in contempt as required by Federal Rule of Criminal Procedure 42(b), and because Jackson lacked the requisite criminal intent. In addition, Jackson's lawyer proffered evidence on the importance of the first and last two days of Passover, but was not permitted to introduce the testimony of two rabbis on this issue. The court found that such evidence was not relevant, as the court did not question Jackson's religious practice or his devotion to his religion.
Jackson testified next. He admitted that Passover occurred in March or April of each year. He further admitted that "perhaps" he had been "tarry in informing the court" that he could not be present during Passover, but stated that he had never before had a request for a continuance due to a religious holiday denied. The court stated that had Jackson filed the motion when he should have, it would have been easy to rearrange the court's calendar, but that his failure to do so fell pitifully short of his responsibility as a lawyer. The court then fined Jackson $1,000.
United States v. Baldwin, In re Jackson, 770 F.2d 1550, 1551-53 (11th Cir.1985), cert. denied, Jackson v. United States, ___ U.S. ___, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). (footnotes omitted).
The referee adopted the Eleventh Circuit's recitation of the facts and recommended that Jackson be found guilty of violating Disciplinary Rules 1-102(A)(1) (a lawyer shall not violate a disciplinary rule), 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), 1-102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law), 7-101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services), 7-101(A)(3) (a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship) and 7-106(A) (a lawyer shall not disregard a ruling of a tribunal made in the course of a proceeding) of the Code of Professional Responsibility and article XI, Rule 11.02(2) (violation of the Code of Professional Responsibility is a cause for discipline) of the Integration Rule of The Florida Bar. The referee recommended that Jackson be publicly reprimanded, *209 be suspended from the practice of law for a period of four months to run consecutively to the term imposed in a prior action, The Florida Bar v. Jackson, 490 So.2d 935 (Fla. 1986), and be required to show proof of rehabilitation before reinstatement.
Jackson challenges the referee's report arguing: 1) that the complaint must be dismissed because the Bar did not sustain its burden of proving the charges by clear and convincing evidence; and 2) that the discipline recommended by the referee is excessive. We reject Jackson's contention that the transcripts of the proceedings before the trial court and the opinion of the Eleventh Circuit are insufficient evidence of the violations charged. The transcripts of the proceedings adequately evidence the factual setting leading up to Jackson's refusal to appear as ordered. Moreover, Jackson's response to the Bar's request for admissions, wherein he admitted all pertinent facts revealed in the transcripts, was entered into evidence at the final hearing. The record contains sufficient evidence to support the referee's recommendation of guilt.
We also reject Jackson's argument that the bar failed to sustain its burden of proving he violated Disciplinary Rule 7-106(A) which provides:
A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling.
Jackson maintains that he "verily believed" that the trial court's order was an illegal infringement on his first amendment rights; and thus, acted in good faith when he refused to appear as ordered.[*] He contends that since the bar has produced no evidence that his failure to comply with the court order was based on other than a sincere belief in its invalidity, this Court should not find him guilty of violating this disciplinary rule.
The good faith exception to Disciplinary Rule 7-106(A) is in the nature of an affirmative defense. And as such, it is the respondent who has the burden to make a prima facie showing of good faith.
Good faith is defined as "an honest belief... . Honesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry... . [It] describe[s] that state of mind denoting honesty of purpose ... and, generally speaking, means being faithful to one's duty or obligation." Black's Law Dictionary 623-24 (5th ed. 1979). The sincerity of Jackson's religious convictions is not questioned; it is the reasonableness of his belief that the trial court's order was an invalid infringement of his first amendment rights which we here consider. Both the contempt proceedings and this disciplinary action arose from Jackson's failure to give the trial court adequate notice of his inability to appear. As the Eleventh Circuit points out, Jackson had a duty to give the court sufficient notice of his inability to appear during certain days of Passover. If Jackson had informed the court of his religious convictions, in a timely manner, and had the court, nevertheless, scheduled the trial for the first two and last two days of Passover, a legitimate first amendment question would have been presented. See 770 F.2d at 1557. If in fact Jackson sincerely believed the trial court's order was an unconstitutional infringement on his first amendment rights, considering the untimeliness of his motion to stay the proceedings and the complexity of the case, this belief was unreasonable.
Under the circumstances, we cannot conclude that Jackson's intentional defiance of the trial court's order to appear was a good faith test of the validity of that ruling. To hold otherwise would extend this exception to all cases in which a recalcitrant attorney claims a sincere belief in the invalidity of a *210 ruling, regardless of the reasonableness of that belief.
Finally, respondent argues that under the unique facts of this case a public reprimand is a sufficient punishment. We agree with respondent that under the facts of this case, the recommended discipline of a public reprimand and four months suspension with proof of rehabilitation is too harsh. However, in light of the recent disciplinary action against Jackson, wherein he received a three month suspension from the practice of law for attempting to obtain compensation for clients for their testimony as nonexpert witnesses, we feel a further suspension from the practice of law is in order.
Although we do not adopt the referee's recommended discipline, we approve his findings and recommendation of guilt. Accordingly, Steven F. Jackson is hereby suspended from the practice of law for one month, effective thirty days from the filing of this opinion, to run consecutively to the current suspension. No proof of rehabilitation shall be required before reinstatement. Judgment for costs in the amount of $1,096.28 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
ADKINS, J., dissents.
NOTES
[*] We have found no opinion of this Court or other jurisdiction, or of the ABA Committee on Ethics and Professional Responsibility which addresses the issue of when, under DR 7-106(A), a refusal to obey a court order will be considered a good faith test of a court's ruling.