501 So.2d 613 (1986)
Carl VIZZI, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 86-1934, 86-2071.
District Court of Appeal of Florida, Third District.
November 4, 1986.
Rehearing Denied December 19, 1986.
*614 Jack M. Denaro, Miami, for appellant.
Jim Smith, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., for appellee.
Before HUBBART, BASKIN and DANIEL S. PEARSON, JJ.
HUBBART, Judge.
This is an appeal from an adjudication and sentence for direct criminal contempt entered against an assistant public defender. The basis of the contempt conviction was an alleged disobedience of a trial court order by counsel, committed during the trial of a criminal case. For the reasons which follow, we affirm.

I
The facts relating to the contempt conviction are as follows. The appellant Carl Vizzi, an assistant public defender, was assigned, upon court appointment of the Public Defender, to represent Alberto Murillo who was charged by information with: (1) sexual battery, (2) kidnapping, and (3) false imprisonment, before the Circuit Court for the Eleventh Judicial Circuit of Florida. On July 29, 1986, a jury was empaneled, with Circuit Judge Amy Steele Donner presiding, and the case proceeded to trial.
The state and the defense presented opening statements to the jury. During the defense opening statement, Mr. Vizzi focused his argument on the character of the complainant:
"MR. VIZZI: She works at a peep show, exhibits her body, sells her body, get *615 tips. This is a woman who's trash, gutter filth.

MR. BAGLEY [prosecutor]: Objection, your Honor, to the character.
THE COURT: Sustained." (emphasis added).
The trial judge then requested a side-bar conference and admonished defense counsel:
"THE COURT: Number one, Mr. Vizzi, your characterization of the victim in this case is totally uncalled for totally and I don't want to hear it again."

(emphasis added).
Defense counsel resumed his opening argument and it proceeded as follows:
"You are going to see hopefully during cross examination the real Anna revealed, the person who sells herself for money, the person who exhibits herself, who works in this type of establishment, who made an arrangement with my client to sell her body for money. She is a whore, a two-bit whore.

MR. BAGLEY: Objection, your Honor.
THE COURT: Sustained." (emphasis added).
Defense counsel then concluded his opening statement.
The following day the prosecutor petitioned the court, outside the presence of the jury, to instruct Mr. Vizzi not to call the victim a prostitute again. The trial court ruled, based on its interpretation of the Rape Victim Shield Statute [§ 794.022, Fla. Stat.(1985)], that Mr. Vizzi was not permitted to attack the character of the victim by (a) delving into the prior sexual behavior of the victim, except as to any prior sexual activity the victim may have had with the defendant, or (b) calling the victim a prostitute, whore, or words of similar import, although it could be shown that the victim had previously taken money from the defendant for sexual favors. Mr. Vizzi, it is fair to say, strongly disagreed with the court's rulings on these points, but was unsuccessful in persuading the court to change its position thereon.[1] These rulings *616 eventually became the predicate for the contempt conviction under review.
The complainant in the case on trial then took the witness stand before the jury. She testified that she worked as a striptease dancer at a club named "Live Peeps" in Miami, Florida. She would dance completely nude in an arena for fifty cents and in a private viewing booth for five dollars a customer. She stated that she was paid by tips, that she was not allowed to ask customers for money or to have any relationships with customers, and that customers were not allowed to touch the dancers. She claimed that the defendant Murillo, a perfect stranger, came to the establishment in question one morning, that she proceeded to a private room to change her clothes, that she conversed with Murillo about "many things," that she later voluntarily left with him to have a cup of coffee, that they drove and talked in his vehicle for two hours, that they stopped in a park where she performed an act of oral sex on him against her will, and that she then took a taxi back to "Live Peeps" without reporting the incident to anyone, although eventually she complained to the police.
Mr. Vizzi, on cross examination, attempted to establish that "Live Peeps" was, in fact, a house of prostitution, that the complainant was an exhibitionist-prostitute, and that her husband (who worked at "Live Peeps") was a voyeur who got sexual gratification when she took her clothes off at "Live Peeps," but became very angry when she engaged in acts of prostitution with the customers. This was done in support of an overall defense theory that the complainant had falsely accused the defendant of a forced sex act in this case in order to avoid the ire of her husband when he found out she had gone off with the defendant. The defendant later gave testimony that no sexual act had taken place on the date in question, that he previously had sex with the complainant but refused to pay for it, that she had threatened to expose him to his wife unless he paid, and that he had come to "Live Peeps" that day to talk her out of the alleged blackmail threats.
Mr. Vizzi, accordingly, cross examined the complainant as follows:
"Q. Isn't this place a front for prostitution?
MR. BAGLEY: Objection; this is irrelevant, Judge.
THE COURT: Sustained.
... .
BY MR. VIZZI:
Q. Isn't it true that girls that work at Live Peeps will often take coffee breaks to do things with the customers who liked how they danced and liked their body 
MR. BAGLEY: Objection.
Q.  and wanted to do a little bit more with them that could be done in those rooms where you work?
Isn't it true that that happens all the time?
MR. BAGLEY: Objection; improper question. It's a compound question and furthermore its irrelevant.
THE COURT: Sustained."
Later, he engaged in the following cross examination of the complainant which led to his contempt conviction:
"Q. Isn't it true that your 19-year-old now-husband doesn't like you to work *617 after hours doing extra things other than work at Live Peeps?
MR. BAGLEY: Objection, your Honor; that's irrelevant.
THE COURT: Sustained. Move on, Mr. Vizzi.
BY MR. VIZZI:
Q. Isn't it true that your husband is a voyeur and you're an exhibitionist and he doesn't like it to get any further than that. He gets sexual gratification when you take your clothes off, but he gets very angry when you perform tricks with customers?

MR. BAGLEY: Objection.
THE COURT: Come to side-bar, Mr. Vizzi.
... .
THE COURT: Michell, at this time I'm holding Mr. Vizzi in contempt of court. He directly violated an order which concerned the mentioning the possible prostitution of this victim and at this time I'm holding him in contempt of court.
Do you have anything to say to purge the contempt?
... .
MR. VIZZI: Yes. I was speaking hypothetically. I'm not talking about her prior sexual acts. I'm talking about the people that work there.
THE COURT: Michell, read the question to me. (Thereupon, the above-referred-to question was read back by the reporter as above recorded.)
THE COURT: Mr. Vizzi, I'm going to sentence you to jail time." (emphasis added).
The next day, the prosecuting attorney again petitioned the court, outside the presence of the jury, to exclude all testimony of the complainant's prior sexual conduct unconnected with the defendant. Mr. Vizzi responded that there was an exception to the Rape Victim Shield Statute, which related to motive and bias of the victim, and he asserted that the defense was that the victim fabricated the story to protect herself from her jealous husband. The court granted the state's request, pointing out that even for exceptions permitted under the law, an in camera hearing is required, and that counsel could not undertake to bypass the court and go straight to the jury.
The trial then proceeded to its conclusion without further incident. The jury found the defendant Murillo not guilty on all charges. The trial court then conducted a sentencing hearing on Mr. Vizzi's contempt conviction. Mr. Vizzi stated, in his own defense, that he had no intent to disobey any of the trial court's orders, that he presented a vigorous defense in the case because he believed the defendant to be falsely accused, and that he had asked the offending question of the complainant to bring out her motive in accusing the defendant. He apologized to the court for asking the question and said he would not violate the trial court's orders in the future. He further stated that perhaps he misunderstood what the court was trying to order as he had no intention to violate the Rape Victim Shield Statute, but that he felt it was essential to bring out what he did in order to accord the defendant a fair trial.[2]
*618 The trial court stated for the record that it found Mr. Vizzi's conduct "so outrageous that it was forced to use the most severe sanction available to maintain order and fairness." The trial court then sentenced Mr. Vizzi to five days in jail on the criminal contempt conviction, from which an appeal was immediately taken to this court. After a stay pending appeal was denied by the trial court, this court issued, upon Mr. Vizzi's application, a writ of habeas corpus, granted a stay pending appeal, and ordered the appeal expedited.[3] Counsel for the respective parties are to be commended for the speed and efficiency with which this appeal has been subsequently conducted and for the highly competent briefs filed and oral argument presented in this cause.

II
The central contention raised by Mr. Vizzi on appeal is that the trial court erred in adjudicating him guilty of direct criminal contempt because his offending cross examination question 
"Isn't it true that your husband is a voyeur and you're an exhibitionist and he doesn't like it to get any further than that. He gets sexual gratification when you take your clothes off, but he gets very angry when you perform tricks with customers?" 
did not violate the trial court's prior order, did not obstruct the proceedings, and was asked in furtherance of a good faith defense of his client. He further urges that the question was asked without any criminal intent to be contemptuous of the court.
The state, on the other hand, urges that the offending question directly violated a prior trial court order which (a) prohibited Mr. Vizzi from referring to the prior sexual conduct of the complainant and (b) prohibited any reference to her as prostitute, whore, or any other term of similar import. Even if this ruling were legally wrong, it is urged that Mr. Vizzi had no right to ignore it, as he did, and accordingly his violation of the court's order constituted a direct criminal contempt.
In order to assess the relative merits of these two legal positions, it is necessary, first, to examine the applicable Florida law on direct criminal contempt, particularly as it relates to the conduct of counsel during the trial of a case. Second, it is necessary to apply that law to the instant case and dispose of the argument of the respective parties. As will be seen, the analysis which follows leads us to an affirmance on this appeal.

A
The controlling law in this case is stated in this court's recent decision in Rubin v. State, 490 So.2d 1001 (Fla. 3d DCA 1986). In that case, this court, speaking through Judge Daniel Pearson, stated:
"It is well settled in this state, and elsewhere, that where a court acting *619 with proper jurisdiction and authority renders an order, an aggrieved party's failure to abide by the order may be punished by contempt even if the order is ultimately found to be erroneous. Health Clubs, Inc. v. State ex rel. Eagan, 377 So.2d 28 (Fla. 5th DCA 1979), cert. dismissed, 383 So.2d 1191 (Fla. 1980) (appellant's failure to obey injunction found to be erroneous as overbroad, punishable by contempt). See also State ex rel. Buckner v. Culbreath, 147 Fla. 560, 3 So.2d 380 (1941); State ex rel. Pearson v. Johnson, 334 So.2d 54 (Fla. 4th DCA 1976); Friedman v. Friedman, 224 So.2d 424 (Fla. 3d DCA 1969); Annot., Right to Punish for Contempt for Failure to Obey Court Order or Decree Either Beyond Power or Jurisdiction of Court or Merely Erroneous, 12 A.L.R.2d 1059 (1950). The reason behind the rule requiring obedience to court orders regardless of their alleged invalidity is that the need for obedience to a court order far outweighs any detriment to individuals who may be temporarily victimized by the order, even if erroneous.
`If a party can make himself a judge of the validity of orders which have been issued for the protection of property rights, and by his own act of disobedience can set them aside, then are the courts impotent, and what the Constitution of the state ordains as the judicial power becomes a mere mockery. This power has uniformly been held indispensable to enable the court to enforce its judgments and to execute its orders necessary to the due administration of law and the protection of the rights of citizens.'

Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468 at 476, 134 So. 529 at 533 (1931)."
490 So.2d at 1003-04. This is hardly a novel pronouncement as the courts both in this state and in other jurisdictions have long followed this rule. Id. at 1003 and authorities collected. Moreover, this rule is plainly applicable to attorneys who try cases before our courts. On the one hand, we expect vigorous advocacy in court by trial counsel and demand, in particular, that counsel's defense of a person accused of a crime be conducted, at times, with great courage. On the other hand, it is elementary that once a trial judge has made a ruling in a case, even if that ruling is legally wrong and is subject to reversal on appeal, defense counsel is obligated to obey the ruling during the course of the trial  subject, of course, to counsel being allowed (a) to make a proper proffer so as to test the ruling later on appeal, and (b) to petition the court to reconsider its prior ruling, although abiding by any ruling on reconsideration. Plainly, "[n]o one [including trial counsel] is justified in disregarding court orders merely because he believes them incorrect." Wells v. State, 471 So.2d 620, 623 (Fla. 5th DCA), cause dismissed, 478 So.2d 54 (Fla. 1985).
It is accordingly settled that defense counsel commits a direct criminal contempt when counsel, in the presence of the court, violates a direct order of the trial court relating to the conduct of court proceedings, such as an order (a) to refrain from a line of questioning, Ward v. State, 354 So.2d 438 (Fla. 3d DCA 1978), or (b) to cease argument and sit down at counsel table, Kleinfeld v. State, 270 So.2d 22 (Fla. 3d DCA 1972), cert. denied, 275 So.2d 251 (Fla. 1973), or (c) to terminate a closing argument after the expiration of a set time limit, Wells v. State, 471 So.2d 620 (Fla. 5th DCA), cause dismissed, 478 So.2d 54 (Fla. 1985), or (d) to wear a tie in court, Sandstrom v. State, 309 So.2d 17 (Fla. 4th DCA 1975), cert. discharged, 336 So.2d 572 (Fla. 1976), or (e) to represent a client and proceed to trial after counsel's prior motion to withdraw has been denied. Rubin v. State, 490 So.2d 1001 (Fla. 3d DCA 1986). Moreover, the fact that counsel later states that he had no intent to be contemptuous when violating the court's order cannot change this result. As this court has stated:
"A disclaimer of intent to be contemptuous is not sufficient to deprive the court of the power to punish contempt. See Cormack v. Coleman, 120 Fla. 1, *620 161 So. 844 (1935); and Wilson v. Joughin, 105 Fla. 353, 141 So. 182 (1932). The orderly conduct of a trial requires that a defendant and his attorney obey the rulings of the trial judge and appeal those rulings which are objectionable. A refusal to obey the rulings of the trial judge on the ground that the ruling is improper may result in the inability of the courts to administer justice."
Ward, 354 So.2d at 439. On the other hand, defense counsel cannot be held in contempt for allegedly violating a nebulous trial court order, such as an order advising counsel "to avoid problems concerning a mistrial," as there can be no subsequent violation of a vague or ambiguous court order. Gilmour v. State, 358 So.2d 63 (Fla. 3d DCA 1978).

B
Turning now to the instant case, we conclude that Mr. Vizzi violated, in the presence of the court, a direct order of the trial court and was therefore properly held in direct criminal contempt. The trial court directly ordered Mr. Vizzi (a) to refrain from delving into the prior sexual conduct of the complainant in the case being tried, except insofar as it related to sexual contact the complainant had with the defendant on trial, and (b) to refrain from calling the said complainant a prostitute, a whore, or terms of similar import. Rather than proffering for the record a line of proposed questioning of the complainant which delved into the complainant's sexual past so as to preserve the court's ruling for appellate review, Mr. Vizzi proceeded, in the presence of the jury, to ask a question of the complainant which directly violated the court's prior direct order. He accused the complainant, in a leading question, of being an "exhibitionist" and her husband of being a "voyeur," and further stated that her husband gets sexual gratification when the complainant takes off her clothes, "but gets very angry when you [the complainant] perform tricks with customers." Obviously, such a question accused the complainant of being a prostitute in violation of the trial court's direct order to the contrary.
The crux of Mr. Vizzi's argument on appeal is that the offending question was a perfectly proper question as it constituted permissible impeachment which went directly to the complainant's motive to fabricate the charges against the defendant. Relying on Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), Kaplan v. State, 451 So.2d 1386, 1387 (Fla. 4th DCA 1984), and Taylor v. State, 455 So.2d 562, 565 (Fla.1st DCA), cause dismissed, 459 So.2d 1042 (Fla. 1984), Mr. Vizzi urges that, where questions of prior sexual conduct of a complainant in a sexual battery case are designed, as here, to demonstrate fabrication, rather than consent or identity, the Rape Victim Shield Statute [§ 794.022, Fla. Stat. (1985)] is inoperative and the subject questions constitute permissible impeachment of an adverse witness which is constitutionally guaranteed by the sixth amendment. It is further urged that the defendant did not violate a direct order of the trial court because the court had only ordered counsel not to violate the Rape Victim Shield Statute, which counsel did not do.
The fatal flaw in Mr. Vizzi's argument is that the trial court did not merely direct counsel to refrain from violating the Rape Victim Shield Statute in the abstract. The trial court directed Mr. Vizzi to comply with the court's specific interpretation of the Rape Victim Shield Statute by not delving into the complainant's past sexual conduct except with the defendant, and by not calling the complainant a prostitute, whore, or a term of similar import as, in the court's view, such conduct, on counsel's part, violated the said statute. Mr. Vizzi, by his offending question, plainly violated that direct order and, accordingly, committed a direct criminal contempt. As for Mr. Vizzi's assertion that his offending question constituted proper impeachment of the complainant, we pass no judgment thereon as this point is plainly irrelevant to whether *621 a criminal contempt was committed. Even if the trial court was legally wrong in its ruling and the questioning herein was proper, Mr. Vizzi was not privileged to disobey the ruling and ask the question he did.
Mr. Vizzi also argues that the offending question was asked in a good faith defense of his client, that he had no intent to be contemptuous of the court's ruling, and that his question did not obstruct the court in the performance of a judicial duty. We disagree. Mr. Vizzi's offending question clearly obstructed the court in its conduct of the trial below. He directly defied the court's authority by his overzealous question and thereby obstructed the trial court in its fundamental duty to run an orderly trial based on the court's, not counsel's, view of the law. The fact that the trial did not grind to a halt or was not otherwise unduly delayed does not, as urged, preclude a contempt conviction here. Defiance by counsel of court orders on how a trial should be run cannot be tolerated in our system of justice under any circumstances. Moreover, it is plainly no excuse under our law to say that Mr. Vizzi did not intend to be contemptuous when, as here, he disobeyed a direct order of the court.
We fully recognize that Mr. Vizzi conducted an otherwise able and successful defense of his client below. Nothing we have said in this opinion should be construed as reflecting adversely on his professional excellence or moral character. This record, however, demonstrates that he defied the trial court's authority below and was properly held in contempt. As for the five-day sentence imposed herein, we are not inclined to consider a suggestion made by counsel at oral argument that we reduce this sentence as being excessive, because the matter has not been raised as a point on appeal. Nor do we express any views on whether the trial court, upon remand, should mitigate the sentence imposed, as that is a matter which lies entirely within the trial court's discretion. See Fla.R. Crim.P. 3.800(b).

III
For the above-stated reasons, the criminal contempt conviction under review, is, in all respects,
Affirmed.
NOTES
[1] The court's rulings are contained in the following dialogue:

"THE COURT: I think more importantly, the Rape Shield protects the status of the victim and the court is going to take judicial notice of Rape Shield Law.
Mr. Vizzi, I admonished you and you did it again. If you 
MR. VIZZI: For the record, you never told me not to say it. What you did was to say not to argue in front of the jury.
I never heard you not to say that.
THE COURT: Well, do you hear it now?
MR. VIZZI: Judge, are you saying 
THE COURT: I am saying that the prior sexual behavior of the victim is not a subject matter for this trial. I've said that once, I'll say it twice, I'll say it three times. A prostitute does not have to be  hold herself out so that she can be sexually molested.
Any person has the right to be free from sexual harassment; prostitutes, people who are not prostitutes, any human being, Mr. Vizzi. I will not say it again. That is the law in the State of Florida.
MR. VIZZI: Okay. Can I just get a clarification here?
Are you saying that 
THE COURT: You may discuss the facts that where she works and the jury can draw any inference they want, Mr. Vizzi; however, the prior sexual behavior of this victim is not the subject matter of this trial and you will not make it so.
MR. VIZZI: Except her relationship with the defendant of course. That's an exception.
THE COURT: If she had a prior relationship, then of course she identified him because she knew him.
MR. VIZZI: I just want to clarify this, Judge. I mean you are threatening me continuously in this case about going to some things and I just want to be very clear.
THE COURT: Because your behavior is on border line contempt about 90 percent. I thought I made that clear.
MR. VIZZI: I wanted to make this very clear. State made an allegation I violated a rule of the Court which I didn't do. I contest what he said, it's not true.
Are you saying that, because as you know this is the thrust of our defense, that this woman is a whore, if you don't like the word whore  I could use another word but I don't think that's so offensive in this country. It's a common word. I could use a lot worse  are you objecting to the word that this woman is a whore? If she has sex with this man for return of money, what is she? Isn't she a whore? Am I not allowed to tell the jury that?
THE COURT: That's exactly right.
MR. VIZZI: I'm not allowed to tell the jury that?
THE COURT: If you want to state she received money for the sexual act for this man, you can do that.
MR. VIZZI: Are you objecting to the word?
THE COURT: I'm objecting to your use of the classification of the victim in this case as a prostitute, a whore or any other words you want to use for it.
If you want to state that the victim in this case took money for the sexual acts you say were not committed, you do so, but that is it.
MR. VIZZI: Judge, you know this is like saying a person who practices law, you can't call him a lawyer.
THE COURT: You know the Rape Shield Law, Mr. Vizzi? Read it.
MR. VIZZI: I've read it, Judge.
THE COURT: Okay.
MR. VIZZI: I don't see where that applies in this case.
THE COURT: Mr. Vizzi, you do so at your peril."
(emphasis added).
[2] Mr. Vizzi's statement to the court at sentencing was as follows:

"Judge, I have the utmost respect for the authority of this court, ... and there was no way, Judge, that I had any intent to disobey any of your orders, Judge. I can sincerely say that there is no way that I intended to violate or disobey your order.
I vigorously represented this man because I truly believed him to be falsely accused, Judge, and I tried to bring out the motive and that is strictly why I asked that question, to bring out the motive of the alleged victim, and I apologize. I sincerely apologize to the court.
If the court was offended in any way and I can express to you that if I ever try a case in front of you, I will never willfully violate any of your orders. I can sincerely state that to you today. I never have in the past, I've known you for 18 months. I have never had any problems with you. You have never held me in contempt. I've always obeyed all of your orders and I think conducted myself honorably before you for the past 18 months that you have been on the circuit court bench and I thought we were friends and I thought that we got along well and I don't understand why you became offended by the question.
Maybe it was a misinterpretation. Maybe it was a  maybe I was misunderstanding what the Court was trying to order me to do; but, Judge, I can tell you that I in no way intended to violate the Rape Shield Law in this case. I can say that from the bottom of my heart.
I did not intend to violate your order. I mean, as much as I wanted to show the court this man's innocence, I was not going to break the law or the orders of this court in order to do it. I know that he's entitled to a fair trial and he's not entitled to something that would require me to break the law or to violate orders.
This man received a fair trial, your Honor. I think he did receive a fair trial and it was absolutely essential that this jury know why this alleged victim was accusing him falsely and the jury did come to that conclusion and any violation that you perceive, Judge, I can sincerely state to you I did not intend in no way to violate your order." (emphasis added).
[3] The basis for our decision to grant a stay pending appeal in this case was: (a) the denial of a stay would have rendered the appeal nugatory in that Mr. Vizzi would have served his five-day sentence before his appeal could be heard in this court; (b) the appeal was taken in good faith on grounds fairly debatable, as Mr. Vizzi's proposed arguments on appeal were worthy of serious consideration; and (c) Mr. Vizzi is a member in good standing of the Florida Bar with good habits as to respect for law and with strong local attachments to the community. Younghans v. State, 90 So.2d 308 (Fla. 1956); Fla.R.Crim.P. 3.691(a).