549 So.2d 1000 (1989)
THE FLORIDA BAR, Complainant,
v.
Ellis S. RUBIN, Respondent.
No. 72255.
Supreme Court of Florida.
August 31, 1989.
Rehearing Denied November 1, 1989.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee and Paul A. Gross, Bar Counsel, Miami, for complainant.
Ellis S. Rubin, in pro. per.
I. Mark Rubin and Guy Bennett Rubin of Rubin, Rubin & Fuqua, P.A., Miami, for respondent.
EHRLICH, Chief Justice.
This disciplinary proceeding is before us for consideration of a referee's report recommending that Rubin be found not guilty of charges that he violated professional ethics by refusing to obey a court order directing him to proceed to trial in a criminal case. The Florida Bar has petitioned for review seeking a public reprimand. We have jurisdiction, article V, section 15, of the Florida Constitution, and consider this case pursuant to rule 3-7.6, of the Rules Regulating The Florida Bar.[1]
Between April 1984 and February 1985, Russell Sanborn was represented on a first-degree murder charge by a series of three *1001 lawyers, each of whom eventually sought and was granted, for various reasons, permission to withdraw. In February 1985, the court granted respondent Rubin's request that he be allowed to represent Sanborn for no fee, based upon Rubin's assurance that he would be prepared for trial by the previously scheduled date of April 29, 1985. On that date, just prior to jury selection, Rubin also petitioned the court for permission to withdraw. Though he gave vague reasons for withdrawal, Rubin's message to the court was that this client was planning to testify untruthfully. The court denied the motion and ordered him to proceed to trial. Rubin sought certiorari, which was denied with an opinion by the Third District Court of Appeal. Sanborn v. State, 474 So.2d 309 (Fla. 3d DCA 1985). When the case was restored to the trial calendar, Rubin again sought to withdraw on the same grounds. His motion again was denied. When he refused to proceed to trial, the court issued a contempt order, which was affirmed on appeal. Rubin v. State, 490 So.2d 1001 (Fla. 3d DCA), review denied, 501 So.2d 1283 (Fla. 1986), cert. denied, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 735 (1987). This Court denied review of the district court decision and denied Rubin's petition for a writ of habeas corpus. He served thirty days in jail for contempt. Sanborn subsequently was represented by a public defender and was convicted.
The question before us is not whether Rubin was legally obligated to obey the court order. That matter has been decided adversely to him by the courts and he has been properly sanctioned for his refusal. Rather, the question is whether he was ethically required to obey. We are concerned here with whether he violated the Code, not with whether he violated the law. The issue in this case is whether a lawyer may disobey a court order because he or she believes that order to be erroneous.
Based upon conversations with his client, Rubin believed that Sanborn was going to take the stand and testify untruthfully. In Sanborn, the district court endorsed the following procedure for allowing the defendant to testify falsely:
The procedure most often sanctioned in this situation is to allow the defendant to take the stand and deliver his statement in narrative form; the defendant's attorney does not elicit the perjurious testimony by questioning nor argue the false testimony during closing argument. The attorney, of course, is not precluded from arguing sound, non-perjurious testimony or attacking the state's case. Under this procedure, a defendant is afforded his right to speak to the jury under oath and the constitutional right to assistance of counsel is preserved, but the defense attorney is protected from participating in the fraud. Under such a formula, the responsibility for committing or not committing fraud on the tribunal lies with the defendant, and not with his attorney, and the jury will decide whether the defendant's testimony is credible.
Sanborn, 474 So.2d at 313 (citations omitted; footnote omitted). The court expressly prohibited disclosure:
"Counsel must not compromise the integrity of his or her client, the court, or the legal profession by exposing a client's proclivities... ."
Id. at 314 (quoting State v. Lee, 142 Ariz. 210, 689 P.2d 153, 163-64 (1984)).[2]
Rubin believed that this free narrative approach was in direct conflict with the following Code disciplinary rules:
D.R. 1-102. Misconduct
(A) A lawyer shall not:
... .
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

*1002 D.R. 4-101. Preservation of Confidences and Secrets of a Client
... .
(D) A lawyer shall reveal:
... .
(2) The intention of his client to commit a crime and the information necessary to prevent the crime.
D.R. 7-102. Representing a Client Within the Bounds of the Law
(A) In his representation of a client, a lawyer shall not:
... .
(4) Knowingly use perjured testimony or false evidence.
... .
(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.
(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.
... .
(B) A lawyer who receives information clearly establishing that:
(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal.
He therefore argues that to follow the district court's approach could be directly participating in perjury and thus violating the above provisions of the Code. Yet, if he disobeyed the court order, he could be violating the provisions requiring him to obey court rulings.
A grievance committee of the Bar recommended that Rubin be privately reprimanded for misconduct. Rubin rejected the recommendation and demanded a trial before a referee. In its complaint, the Bar charges Rubin with the following violations:
Disciplinary Rule 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), Disciplinary Rule 2-110(A)(1) (a lawyer shall not withdraw from employment in a proceeding before a tribunal without its permission), and Disciplinary Rule 7-106(A) (a lawyer shall not disregard... . a standing rule of a tribunal or a ruling of a tribunal).
The Bar contends that Rubin had no right to refuse to obey a lawful court order and that such refusal, in effect, constitutes a per se ethics violation. Rubin, on the other hand, contends that the Code itself is the source of his trouble, that it required him to disobey the order.
Disciplinary Rule 7-106(A) of the former Code of Professional Responsibility provides:
A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling.

(Emphasis added.) Undeniably, Rubin was placed in a difficult situation when it became clear to him that the client intended to commit perjury. The rules provided little guidance as to how to proceed, and indeed placed Rubin in the position where he would have to choose which rule to violate. However, Rubin initially followed the proper course by seeking to withdraw, and then appealing the denial of that motion. In this way he properly tested the validity of the trial court's order preventing him from withdrawing.
On writ of certiorari, the Third District Court provided the guidance missing from the rules, and outlined a procedure to be followed. In this way, the court "assured Rubin that he would carry out his ethical obligations as an attorney" if he followed the procedure. Rubin, 490 So.2d at 1003. Despite this, Rubin maintained that the district court's decision was erroneous and refused to proceed to trial, thereby flaunting the trial court's order and the mandate of the district court. For this he was held in contempt. In affirming the contempt order, the Third District Court stated:
Rubin is certainly free to disagree and maintain his personal view of what the *1003 law is or should be, or indeed his personal view of what some higher law provides. It is, however, the decision of the mortal judges in Sanborn v. State, having not been stayed, much less set aside, by some higher court with jurisdiction over the matter, which Rubin must obey. Thus, even if, arguendo, it might have been later determined that Sanborn v. State was wrongly decided, Rubin's contumacious refusal to follow the undisturbed order to proceed would be nonetheless punishable as a direct contempt... . [T]his rule of law is essential to the maintenance of our system of laws as a whole.
Id. (footnote omitted). We totally agree. An attorney is not permitted to ignore and refuse to follow a court order based upon his personal belief in the invalidity of that order. To countenance that course is to court pandemonium and a breakdown of the judicial system. As this Court recently noted, if an attorney doubts the validity of court orders, "his option [is] to challenge them legally rather than to ignore them... . [H]e is obligated to obey [court orders] until such time as they are properly and successfully challenged." The Fla. Bar v. Wishart, 543 So.2d 1250, 1252 (Fla. 1989) (emphasis added). To hold otherwise would be to give any attorney claiming a sincere belief in the invalidity of an order carte blanche to disregard that order. See The Fla. Bar v. Jackson, 494 So.2d 206 (Fla. 1986). Such a situation would be intolerable.
In this case, Rubin properly challenged the order and lost. It was then incumbent upon him to follow the dictates of the trial court. His deliberate failure to do so constituted a violation of Disciplinary Rule 7-106(A). His effective withdrawal from the case without permission of the court constituted a violation of Disciplinary Rules 1-102(A)(5) and 2-110(A)(1). Rubin argues that if he had followed the procedure outlined by the district court he would then be open to discipline for violation of other provisions of the Code. However, if Rubin had been cited for violation of the Code for following the court-prescribed procedure, his good faith reliance on the trial court's order and the mandate of the district court would have been a good, and most likely a complete, defense. Further, the fact that the procedure outlined by the district court has since found disfavor in the eyes of the American Bar Association, commentators, or this Court, is irrelevant to the question of whether we can or should tolerate a deliberate defiance of judicial authority, however well intentioned. We cannot and should not.
For the foregoing reasons, we reject the referee's findings as clearly erroneous and find Rubin guilty of the charged violations. The Florida Bar asks that a public reprimand be imposed, and we concur. Accordingly, it is the judgment of this Court that attorney Ellis S. Rubin is publicly reprimanded by publication of this opinion in the Southern Second reporter. Rubin is ordered to pay the costs of this proceeding. Judgment is entered against him for $817.40, for which sum let execution issue.
It is so ordered.
OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
SHAW, J., dissents with an opinion.
KOGAN, J., did not participate in this case.
SHAW, Justice, dissenting.
With due respect, I believe the majority opinion improperly mixes the legal aspects of the proceeding with its ethical aspects.
Rubin was confronted with a client who intended to lie when placed on the stand. Rather than participate in perjury, Rubin sought leave to withdraw, which was denied. When he petitioned for certiorari, the district court affirmed and endorsed the free narrative approach, advising Rubin to stand by silently while his client lied.[1]Sanborn v. State, 474 So.2d 309 (Fla. 3d DCA 1985). When Rubin refused to participate *1004 in this procedure, he was held in contempt. This was affirmed on appeal. Rubin v. State, 490 So.2d 1001 (Fla. 3d DCA), review denied, 501 So.2d 1283 (Fla. 1986), cert. denied, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 735 (1987). This Court denied review, and denied his petition for writ of habeas corpus.
Rubin served thirty days for contempt, thus he was not allowed to disobey a court order with impunity. Having paid the legal price for his contemptuous conduct, the underlying question presented by this ethics proceeding is whether Rubin violated the Code of Professional Responsibility (Code), not whether he violated the law. The majority opinion concedes that Rubin was placed in a difficult ethical position. No matter how he acted, he necessarily would act contrary to certain Code provisions. If he followed the procedure endorsed by the district court, he seemingly would violate the provisions that prohibit a lawyer from participating in perjury. If he refused to obey the court order requiring him to proceed to trial, he apparently would violate the provision requiring him to obey court rulings. The majority concludes that the course of conduct Rubin followed was wrong because the district court in endorsing the free narrative approach provided him with the proper ethical guidance and to allow him to go undisciplined will result in court chaos:
On writ of certiorari, the Third District Court provided the guidance missing from the rules, and outlined a procedure to be followed. In this way, the court "assured Rubin that he would carry out his ethical obligations as an attorney" if he followed the procedure.
Maj. op. at 1002. I am uncomfortable with the notion that a district court can offer formal guidance in a matter of lawyer ethics. This would appear to be in direct conflict with the Florida Constitution which provides:
SECTION 15. Attorneys; admission and discipline.
 The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted.
Art. V, § 15, Fla. Const. This Court alone has authority to render such guidance, and it does so through the administration of disciplinary proceedings, the promulgation of rules governing lawyer discipline, and the issuance of opinions. Rubin properly looked to this Court, and its Code, for exclusive direction and finding scant authority on an issue that has divided the legal community, he followed what he perceived to be the controlling Code provisions.
The majority frames the issue as "whether a lawyer may disobey a court order because he or she believes that order to be erroneous." Maj. op. at 1001. That was the question presented in The Florida Bar v. Wishart, 543 So.2d 1250 (Fla. 1989), wherein the lawyer disobeyed court rulings simply because he believed in his heart that it was the right thing to do. I do not believe that this is the issue before us. Rubin disobeyed the court order (after exhausting his legal remedies) not solely because he thought the ruling was improper, but because in his opinion specific Code provisions directed that he do so, a far different situation from that presented in Wishart. The majority's reasoning that if it were to withhold discipline in such cases "court pandemonium and a breakdown of the judicial system" would result is dubious. See Maj. op. at 1003. Discipline cases involving such clear conflict within the Code itself are, I would hope, extremely rare. This appears to be borne out by the fact that such conflict has not been a problem in the past.
In summary, I do not believe that Rubin willfully violated the Code. He was placed in the untenable position of being forced by the courts and the Code itself to choose which of the tenets to violate. By refusing to participate in the crime of perjury, he chose the course of conduct that he believed constituted the least grievous violation, and his choice has been vindicated by the American Bar Association,[2] by commentators,[3] *1005 by subsequent acts of The Florida Bar and this Court,[4] as well as by the United States Supreme Court,[5] all of which have condemned the free narrative approach. I do not judge the correctness of his choice, but rather underscore the fact that through no fault of his own he was given a Hobson's choice that had him violating a Code provision no matter what he did.
I would approve the referee's report and under these highly unusual circumstances impose no discipline.[6]
NOTES
[1] The complaint and report are based on the former Florida Bar Integration Rule and Code of Professional Responsibility.
[2] This "free narrative" procedure has been disapproved by the American Bar Association and has been condemned by commentators within this state. See Braccialarghe, Client Perjury: The Law in Florida, 12 Nova L.Rev. 707 (1988); Gottlieb, Pinnochio for the Defense, 14 Fla.St.U.L.Rev. 891, 893-95 (1987). It is prohibited under the current rules, which were approved by this Court and became effective January 1, 1987. The Fla. Bar re Rules Regulating The Fla. Bar, 494 So.2d 977 (Fla. 1986) (rule 4-3.3 and comment).
[1] Rubin could not seek review of the district court decision because, as the court pointed out, it was "a case of first impression" that could not provide conflict jurisdiction to this Court. Sanborn v. State, 474 So.2d 309 (Fla.3d DCA 1985).
[2] See Gottlieb, Pinnochio for the Defense, 14 Fla. St. U.L. Rev. 891, 893-95 (1987).
[3] See, e.g., Braccialarghe, Client Perjury: The Law in Florida, 12 Nova L.Rev. 707 (1988); Gottlieb, supra, note 2.
[4] The free narrative approach is prohibited under the current Rules Regulating The Florida Bar (Rules), which were approved by this Court. See The Fla. Bar re Rules Regulating The Fla. Bar, 494 So.2d 977 (Fla. 1986) (rule 4-3.3 and comment).
[5] See Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).
[6] I note that the majority opinion offers little guidance for lawyers who are confronted with criminal clients who intend to testify falsely. Other than saying in footnote 2 of its opinion that the free narrative approach is prohibited under the current Rules, the majority does not tell lawyers what steps to take.