DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GAVIN WASHINGTON GUY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-2054

[December 18, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Marni A. Bryson, Judge; L.T. Case No. 50-2016-CF-011945-AXXX-MB.

Carey Haughwout, Public Defender, and Christine C. Geraghty, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Gavin Washington Guy was convicted for the first-degree murder of his girlfriend ("the victim"). He now raises five issues on appeal. We affirm on all issues raised but write to address Appellant's arguments concerning the trial court's limitation of the defense's time for voir dire of the jury panel, and failure to conduct a *Richardson*[1] hearing with respect to a recorded jail house statement of Appellant that was discovered and disclosed after trial had begun. Because we find no reversible error, we affirm the trial court's judgment and sentence.

## Background

Appellant lived with the victim, their children, and the victim's brother, notwithstanding the fact that the victim had a restraining order against Appellant. On the night of the tragic incident in question, the victim and Appellant had an argument when the victim got home from work.

---

[1] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

Appellant went into his bedroom and took a gun from his dresser. He then confronted the victim and her brother, grabbed the victim by her neck and started to strangle her. The brother pulled Appellant off of the victim and, when Appellant reached for the gun, the victim ran out of the apartment.

Later that evening, the victim sent a text message to her brother, asking him to get her keys from Appellant. Appellant told the brother that the victim would have to return and ask him for the keys. When the victim did return, however, Appellant refused to give her the keys. Instead, he followed her out of the apartment and, as observed by a neighbor, walked straight up to the victim and shot her in the chest, while she was speaking on her phone to a 911 operator. Appellant was arrested and charged with first-degree murder. His defense was that the gun accidentally discharged during a heated and passionate argument.

*A. Voir Dire*

In a pretrial scheduling order, the predecessor trial court stated that each party would have ninety minutes for voir dire of the jury pool. The predecessor court noted in the scheduling order that "[i]f either side needs additional time, counsel may approach the bench and indicate what important topics and/or questions relating to the juror's qualifications . . . have not been reached and the amount of time desired to accomplish those goals." Appellant filed a written objection, submitting that ninety minutes was an unreasonable amount of time in which to uncover any bias and prejudice of potential jurors in a first-degree murder trial. Appellant asked the court to "abandon or ease its limitation of voir dire."

When jury selection began six months later, the trial court stated that it would impose the ninety-minute limitation, unless "a real issue . . . arises relative to not being able to cover certain things." The trial court noted that both parties had been given ample time "to structure [their] questioning" and "use [their] 90 minutes."

The State concluded its voir dire without requesting more time. The following day, before defense counsel began his voir dire, he renewed his objection, arguing that with a remaining juror pool of forty-eight, he was given less than two minutes of questioning per juror. Defense counsel was still questioning potential jurors when the ninety minutes expired. He requested "at least" an additional ninety minutes. The trial court commented to the effect that defense counsel may not have used his time wisely, and limited counsel to an additional ten minutes.

*B. Purported Discovery Violation*

After the State presented its case, defense counsel and Appellant advised the court that Appellant planned to testify in his defense, following other defense witnesses. Three defense witnesses presented testimony, including a professional firearms instructor. The next day (a Tuesday), defense counsel advised the court that he had just learned from the State of a recorded jail call made two days prior (Sunday), in which Appellant "basically . . . told someone that [he was] intending to lie and say what he was told to say." After being provided an opportunity to listen to the recording, defense counsel informed the court that he had "some concerns and requests." Defense counsel represented that "in a nutshell," Appellant stated on the call that, once on the stand, he was "going to say what them [sic] want me to say. . . . And . . . to . . . tell the family not to be surprised. Whatever they hear is what they want me to say."

In response to defense counsel's inquiry about whether the court would admit the statement, the trial court informed defense counsel that the jail call recording would not come in unless Appellant testified. Defense counsel also expressed concern regarding his ability to represent Appellant in light of the call's implication that Appellant had been encouraged to perjure himself. After conferring with the Public Defender, defense counsel moved to withdraw as counsel, and also moved for a mistrial, "because of this issue and because of the concerns about the fairness of [the] proceeding, in terms of [the Public Defender's] continued representation of [Appellant]."

In furtherance of his motion for a mistrial, defense counsel argued that the State had access to the recording for two days and should have disclosed it sooner. Counsel for the State responded that the call was recorded on Sunday night and came to the prosecutor's attention on Tuesday morning, after which she immediately brought the call to the attention of the defense and the court. The trial court denied the motion to withdraw and the motion for mistrial, and further found there was no discovery violation, stating: "They were made aware of it today, and they gave it to you today. We didn't know if he was going to testify until, really, yesterday." The court also denied the motion for mistrial and motion to withdraw, stating that, if it were to grant the motion to withdraw, "you can create your own conflict at any time." After the court's ruling, the defense rested. Appellant confirmed that he no longer wished to testify because the State could use his statements on the call against him if he did.

3

The trial court's refusal to provide additional voir dire time and its rulings following the discovery of the jailhouse call are challenged on appeal.

## Analysis

*A. The trial court did not abuse its discretion by imposing a ninety-minute time limit (plus a ten-minute extension) on Appellant's voir dire of the jury panel.*

Appellant argues the trial court erred in limiting his voir dire time. The State responds that the defense had ample time to prepare for the time limitation; the case, though serious, was not overly complex and really only involved one issue—whether Appellant's gun accidentally fired while he was holding it; and, Appellant's counsel misused his voir dire time.

This court reviews the time limitation for abuse of discretion. *Thomany v. State*, 252 So. 3d 256, 256-57 (Fla. 4th DCA 2018).

"The length of time allowed for conducting the voir dire examination does not necessarily correlate to the fairness afforded the parties in selecting an impartial jury." *Watson v. State*, 693 So. 2d 69, 70 (Fla. 2d DCA 1997). As this court recently reiterated in *Thomany*, "counsel's time for voir dire is not unlimited," 252 So. 3d at 257, and "the trial court is in the best position to evaluate what is going on in the jury selection process." *Id.* at 258 (quoting *Hoskins v. State*, 965 So. 2d 1, 11 (Fla. 2007)).

Though parties must be afforded "a *reasonable* voir dire examination of prospective jurors," *Hopkins v. State*, 223 So. 3d 285, 286 (Fla. 4th DCA 2017) (emphasis added), "the amount of time that is allotted for voir dire depends on the nature of the case," and "[t]he appropriateness of the time limitation imposed by a trial court must be reviewed on a case-by-case basis." *Watson*, 693 So. 2d at 70 (citing *Rodriguez v. State*, 675 So. 2d 189, 191 (Fla. 3d DCA 1996)). As we stated in *Thomany*, "no mathematical formula exists, nor should a mathematical formula exist, for the amount of time provided for voir dire." 252 So. 3d at 257. "In reviewing a trial court's discretionary decision to limit the amount of time allotted for voir dire, we consider the nature of the case and the reasonableness of the use, by the attorneys, of the time allotted." *Id.* (citation and quotation marks omitted).

Very recently, in *Strachan v. State*, 44 Fla. L. Weekly D2467 (Fla. 4th DCA Oct. 2, 2019), we reversed in part based on our conclusion that the trial court "unreasonably limited the defendant's voir dire of potential

4

jurors." *Id.* at D2469. In reaching this conclusion, Judge Gerber's opinion noted "four observations." *Id.* at D2468. First, defense counsel in *Strachan* "used the ultimately-allotted fifty-five minutes very wisely." *Id.* Second, the trial court refused to provide additional time for defense counsel to question jurors concerning "their understanding of the defendant's constitutional rights," stating "I went over all those issues." *Id.* Third, while the State, when its allotted time expired, "did not have to ask the trial court for more time – the trial court, on its own volition, offered [ten more minutes]," the trial court merely provided the defense with the same ten minutes and "did not treat defense counsel the same when the defendant's allotted time expired. Instead, defense counsel had to ask for more time, which the trial court quickly denied." *Id.* Finally, the trial court persisted in the denial of the defense's request for additional time notwithstanding the State's "attempt to aid the trial court in avoiding this error." *Id.*

The instant case differs to some degree from *Hopkins* and *Strachan*. In *Hopkins*, the trial court refused to "grant *a few additional minutes*, where there were jurors whom defense counsel could not reach within the allotted time for voir dire." 223 So. 3d at 287. In *Strachan*, the trial court also refused to provide defense counsel with any of the additional time sought, holding the defense to the same time it had provided the State. 44 Fla. L. Weekly at D2468. Here, only the defense requested and received additional time, albeit less than requested. Also, unlike in *Strachan*, the State in this case did not express concern that the trial court's failure to give the defendant more voir dire time might constitute error.

Whereas we found the defense had used its allotted time wisely in *Hopkins* (reversal) and *Strachan* (reversal), the instant case is more akin to *Thomany* (affirmance), where we noted that defense counsel "spent an extraordinary amount of time asking questions not reasonably intended to elicit useful information in deciding whether to exercise cause or peremptory challenges." *Thomany*, 252 So. 3d at 257.

Here, although part of the defense theory was that the defendant's gun accidentally fired while he was holding it, the other part of the defense theory was that the discharge occurred "during a heated and passionate argument." Yet, defense counsel focused his voir dire almost exclusively on firearms safety and training. When the trial court interjected to remind defense counsel about the time limitation—and to note the significant amount of time counsel had already spent on "training"—defense counsel said "[t]hat's okay," he was watching the time; he then proceeded with the same line of questioning. And later, with the additional ten minutes given

5

by the trial court, counsel chose to *continue* asking prospective jurors about their experience and training with, and feelings about, firearms.

Unlike defense counsel in *Strachan*, who "efficiently asked potential jurors about a range of topics," 44 Fla. L. Weekly at D2468, defense counsel here appears to have made a tactical decision to spend much of his voir dire time questioning about firearms. Defense counsel continued with this line of questioning even after the trial court interjected *before* his original time limit expired, *and after* his original time limit expired (during his additional ten-minute allotment). Applying the abuse of discretion standard of review, "although the trial court limited the amount of time given to both sides for voir dire, the amount of time was sufficient to have allowed the defendant's trial counsel to have completed voir dire." *Thomany*, 252 So. 3d at 257.

We have one final note on this issue, applicable to all trial courts presiding over jury selection. As articulated by Judge Gerber in *Thomany*, this opinion should not be read to suggest "that inflexibility in the amount of time provided for voir dire is a wise path upon which to continue to travel"; "[a] brief extension of time would have been far less than the many hours which both sides' appellate counsel spent on this appeal, and many days less than the amount of time which would have been necessary to try this case again if we decided to reverse." *Id.*

> *B. There was no error in the trial court's failure to find a discovery violation with respect to Appellant's jail call; failure to conduct a Richardson hearing; and denial of defense counsel's motion for mistrial or, in the alternative, motion to withdraw.*

Appellant first argues the trial court erred in failing to find a discovery violation and conduct a *Richardson* hearing after the State disclosed Appellant's recorded jail call on the morning he was to testify. Second, Appellant contends the court erred in failing to conduct a hearing to determine whether a conflict existed between Appellant and his appointed counsel based upon Appellant's recorded statement, which (arguably) suggested his counsel told him what to say if he chose to testify.

"A *Richardson* hearing is required when there is a *possible* discovery violation in order to flesh out whether there has indeed been a discovery violation." *Thomas v. State*, 63 So. 3d 55, 59 (Fla. 4th DCA 2011) (quoting *Landry v. State*, 931 So. 2d 1063, 1065 (Fla. 4th DCA 2006)). A trial court is not required to conduct such a hearing where no discovery violation has occurred. *Knight v. State*, 76 So. 3d 879, 888 (Fla. 2011). "To the extent that the court's rulings rely on a factual predicate, we review the record

for competent substantial evidence to support the trial court's findings." *Ferrari v. State*, 260 So. 3d 295, 309 (Fla. 4th DCA 2018).

Rule 3.220(j) of the Florida Rules of Criminal Procedure provides that, "[i]f . . . a party discovers additional . . . material that the party would have been under a duty to disclose or produce at the time of the previous compliance, the party shall promptly disclose or produce the . . . material in the same manner as required under these rules for initial discovery." The undisputed evidence is that the recording of the call at issue was made on a Sunday night; the State was informed on Monday that Appellant was likely to testify, leading the prosecuting attorney to check on Tuesday morning as to whether there were any recorded jail calls, for cross-examination purposes in the event that Appellant did testify; and, when the recording was discovered, it was immediately disclosed to the defense. The existence of the jail call recordings was within the constructive notice of the State no earlier than Sunday night. The substance of these recordings was known (and created) by Appellant at the time of the calls; the nature of Appellant's statements on the call did not come to the attention of the State until Tuesday morning and was then *promptly* shared with defense counsel. *Cf. Dabbs v. State*, 229 So. 3d 359, 360 (Fla. 4th DCA 2017) (holding that the defendant was procedurally prejudiced by various documents and a new witness *affirmatively acquired and secured, respectively, by the State* after the defendant had laid out his theory of defense).

The trial court made factual findings in concluding there was no discovery violation, stating: "They were made aware of it today, and they gave it to you today. We didn't know if he was going to testify until, really, yesterday." These findings and the resulting conclusion that there was no possible discovery violation are supported by competent substantial evidence.

Appellant also argues the court erred in failing to conduct a hearing to determine whether a conflict existed between Appellant and his appointed counsel based upon Appellant's statement on the jail call that arguably suggested counsel encouraged him to commit perjury. "The decision of a trial court to deny a motion to withdraw will not be disturbed absent a clear abuse of discretion." *Delacruz v. State*, 276 So. 3d 21, 24 (Fla. 4th DCA 2019) (quoting *Sanborn v. State*, 474 So. 2d 309, 314 (Fla. 3d DCA 1985)).

When questioned by the trial court, defense counsel stated that he did not believe that Appellant would testify falsely ("I don't have any reason to believe that [Appellant] wouldn't tell the truth or that he's not told me the

truth."). Accordingly, there was no ethical concern or conflict of interest mandating counsel's withdrawal. Moreover, it is not entirely clear, in listening to a recording of the call, that Appellant actually intimated during the call that he had been instructed to give false testimony when called as a witness—"going to say what they want me to say" could very well include telling the truth. Appellant never asked the court for new counsel nor represented that his counsel had encouraged him to commit perjury. Ultimately, Appellant and his counsel made the decision that Appellant would not testify (and the recording of the jail call would not be placed into evidence). There is no trial court error in the denial of the motion to withdraw.

## Conclusion

The evidence at trial indicates that a verbal argument between Appellant and the victim escalated to a physical attack by Appellant and eventually the fatal gunshot that ended one life and impacted many others, including the victim's children. Although the trial court's limiting the defense's questioning of prospective jurors during voir dire is cause for concern, we conclude that, as set forth above, there was no abuse of discretion. Nor was there a discovery violation warranting a *Richardson* hearing. On these issues and all others raised by Appellant on appeal, we affirm.

*Affirmed.*

TAYLOR and MAY, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

8